NEEDHAM MIMS, plaintiff in error, *vs.* ABNER LOCKETT, defendant in error.

33  9
101  7
33  9
f111 394

L. was engaged in a treaty of marriage with the only daughter of M., who, to induce L. to break up a business in which he was then engaged, and to settle near him, so that he could have the benefit of the society of his daughter, promised to give him a settlement of land near to where he, M., then lived, at the same time pointing out and going over the land with him. After the marriage, L. went into the possession of the land by the consent of M. as a gift, and continued to use and occupy it as his own for several years, in the meantime clearing the land, and making valuable improvements. On a bill filed by L., for specific performance, and to compel an execution of titles, etc.: *Held*, that the gift was good, and would be enforced in equity; that the taking of possession, and making valuable improvements, was such a part performance as took the case out of the statute of frauds. *Held*, further, that M. could not show, in avoidance of such performance, that the benefits received by L., from the use of the lands, etc., fully and more than compensated him for all improvements and expenses, etc.

In Equity, in Bibb Superior Court, tried before Judge HARRIS, at December Term, 1860.

The facts of this case are fully stated in the opinion of the Court as pronounced by Mr. Justice LYON.

BAILEY & DEGRAFFENREID and E. A. NESBIT, for plaintiff in error.

RUTHERFORD and L. N. WHITTLE, for defendant in error.

*By the Court*—LYON, J., delivering the opinion.

This was a bill filed by Abner M. Lockett against Needham Mims, Thomas N. Mims, and William Holmes, sheriff of Bibb County, for specific performance and injunction. The facts alleged in the bill are, that the complainant intermarried with the daughter of the defendant, Needham Mims, in the year 1849; that at, and previous to, the intermarriage, he, complainant, was engaged as contractor, at work with his hands, on the South Western Railroad, which was a lucra-

tive business; that he was about to engage with others in another and very profitable contract, as it turned out to be; and that while the treaty of marriage was pending, and before the marriage, and frequently afterwards, Mims importuned him, the complainant, to quit the business in which he was then engaged, and to settle near him, where he could have his daughter, who was an only one, near him, and enjoy the benefit of her society; and that to induce him to do so, he pointed out a settlement of land, consisting of about 660 acres, that he would give him; that he took him over the land, pointed out the boundaries, etc., and spoke of the land as complainant's. That, influenced by these considerations, complainant soon after the marriage quit the business in which he was then and had been previously engaged, and moved his hands on the lands in the year 1850, and took possession of it as his own, understanding it to be a gift. That he continued to occupy and use the land as his own from that time up to the year 1856, when the bill was filed; that during the time he made valuable improvements, by clearing land, putting into a state of cultivation, building houses, etc., to the value of two thousand dollars, or other sum; the defendant making no claim to the land, or any part thereof, but frequently and repeatedly saying that he had given it to the complainant, that it was his, etc.; that at one time, he had the surveyor to run the line dividing the tract given to complainant from his land, to prevent complainant from going over on to his land in cutting timber, and to know where to run his fence, etc.; that in the year 1856, shortly before the filing of the bill, defendant pointed out, and caused the said land to be levied on by the sheriff of Bibb, to satisfy an execution against said defendant, in favor of William Lockett, the brother of complainant, on which was due about the sum of $6,000. That at the sale, and when the land was being offered, complainant gave notice of his claim of title to the land to the persons present; and after which, the defendant, Thomas N. Mims, a son of the defendant Needham, and who was present, and heard the notice, bid the sum of $4,000 for the land, and as no other bid was

made for the land, the said Thomas raised his own bid to $6,000, when it was knocked off to him, and a deed made by the sheriff to him in pursuance of such sale. That the said sum so bid by said Thomas, and paid to the sheriff, was in whole or in part really the money of defendant, Needham, and raised by him by the sale of other property advanced to Thomas N., for that purpose. That said Thomas N., in bidding off said land, and in taking a title from the sheriff, did so with knowledge of complainant's rights in the premises.

The bill prayed for a specific performance by the said Needham, whether it be a sale made upon good and valuable consideration, or whether it be a gift, and that said Needham execute to complainant a proper warrantee deed for said lands, and that the sheriff's sale and deed for the premises be declared null and void, and the deed surrendered to be cancelled; that all the defendants be restrained by injunction from disturbing complainant's possession of the land.

The answer of the defendant, Needham Mims, admits that at the time of the marriage, complainant was engaged in business on the South Western Railroad, and that he desired complainant to settle near him, that he and his wife, in their old age, might enjoy the society of complainant's wife—their only daughter, for whom it was defendant's wish to provide as amply and comfortably as the condition of his estate at his death, after the payment of debts and justice to his other children, would permit, not anticipating that the lands claimed by complainant would be needed to pay his debts, and with the intention and desire to have his daughter near to him, and in fact intending at his death to give her a settlement of land near where he now lives, if at that time the condition of his estate would enable him to do so. That he did request the complainant to settle on the land claimed by him; and that he, complainant, did enter into the possession of them with his consent, and at his request, except fifty acres, of which he never had the possession; and that in conversation with complainant the defendant did say to him, that he intended these lands for his daughter. That before

the marriage he did suggest to complainant to settle near him, and spoke to him of the land which he intended for his daughter; and did say to him, if her share would not be sufficient, he, complainant, could purchase lands enough near him to make a good settlement, or words to that effect. That he did go with complainant upon the lands that he intended ultimately to give to his daughter, pointed out the lines, spoke of the quality, and at the time referred to (in defendant's bill), in presence of his family, he did use the words attributed to him, to wit, " Mr. Lockett is well pleased with his place, and thinks it will be a pretty place to settle." Defendant denies that he did give to the complainant the lands claimed, nor any part of them, and did not intend to give 'them to him or his wife; on the contrary, retained the title to the same, being fully determined then and since, that he should not have a title to the same, either as against himself or his heirs and creditors. That at the time of the conversation, and up to the sale, respondent held the title to the land, and he only intended to give him the use of the same until his death, or until he made some other disposition of them, and not until his death did he expect or intend to give them. That complainant knew, whether he would give them to his daughter at his death or not, depended upon his debts, the condition of his estate, and of his family, at that time. He denies that he gave the lands to complainant, in consideration of his contemplated contract, or for, or on account of, any other consideration; or that he ever entered into any contract or agreement by which they were sold or given to him. On the contrary, he says, all that ever transpired in word or deed, and all that he ever said or did, in this respect, had reference to a future purpose to give them to his daughter at his death, all the time intending to reserve to himself the right to do so or not, according as circumstances might determine. He denies that any acts or words done or said by him to complainant in this respect, constitute a gift, and was not intended to be a gift, or to convey a title, but had reference only to a future purpose, defendant all the time retaining, and intending to retain, his right to, and

dominion over, the land in his own hands.    That before and after the marriage, he had a free and full conversation with the complainant about his affairs, telling him that he did not wish him to be deceived, that he was very much in debt, and if he was able to give his daughter a settlement of land near him he would like to do so; and that he had already made his will, and in that he had left certain lands, being chiefly those claimed, to his daughter, but if she died without children, it would revert, etc.'; but that he did not intend to part with the title until his death; and that he could live on the lands, and have what he could make off of them; that he, with his negroes, aided by the hands of complainant, moved some houses off his land on to those intended for his daughter, and built others; and that a part of the negroes intended for his daughter, and the hands of complainant, went into and occupied those houses on this land in 1850. During that year, complainant lived with respondent, his negroes working with respondent's on his lands, complainant having a part of the crop.    Complainant also lived with respondent in 1851, and in the fall of that year, or spring of 1852, he and his family went on to the land, respondent consenting that he might have the use of the land, but with the knowledge, and according to the understanding with respondent, that he did not own the land, that the defendant retained, and intended to retain, the titles and control of the same.    The complainant then remained in possession, and is still living on the land.   In 1850, complainant and respondent jointly cleared and cultivated a new ground on the land, and complainant has since continued to cultivate it, and has since cleared some small fields, such as to make the use of the lands more profitable, and with knowledge that the lands were not his.    Respondent did propose to complainant to change the lines of the lands which he intended to give his wife and daughter, so as to have the houses, which were on the part allotted in his will to his wife, on the lands intended for his daughter; and he did have the line run by a surveyor, and all this he did in reference to an ultimate gift to his daughter.    The dealing made by complainant with these

lands was with the consent of respondent, believing it would enhance their value for cultivation to complainant, and not injure their ultimate value to his daughter. The improvements were made by complainant, with knowledge that the lands were not his, and without even, until a recent period, asserting title to it. Respondent denies that the improvements were of the value of two thousand dollars, and he asserts that the use and profits realized by complainant therefrom were worth vastly more than all the improvements, and instead of losing thereby, he has been a considerable gainer.

Defendant, in his answer, sets up and insists on the statute of frauds as a bar to performance, and that he did point out the land for levy and sale, in satisfaction of the execution in favor of William Lockett, and that he persuaded his son, Thomas N., to buy the land, and furnished him with $3,500 of the money paid for it at the sale, and took said Thomas' note for said amount, which he now holds; that complainant gave notice of his claim.

The defendant, Thomas N., by his answer, denies all knowledge of a gift or of any title or interest of complainant in the land; that complainant did give notice at the sale, of his claim to the land; that he purchased the land *bona fide* for his own use and benefit, and that he sold his own land to raise money to enable him to buy the land; that he did bid $4,000, and raised this bid to $6,000, so as to pay off the execution, and thus to prevent the sale of other lands of his father that was advertised at the same time, and that he did so at the request of his father, from whom he borrowed $3,500 of the money to enable him to make the payment, etc.

On the trial, the complainant introduced ALBERT HORNE as a witness, who testified that he knew the lands in dispute; was on it as overseer for Lockett and Mims, in 1850, and had not seen it since; heard Mims say he had given the lands to Lockett, and that he intended to do better by his daughter (Lockett's wife,) than any other of his children. This was the first year after Lockett's marriage. Heard Mims say this often. Heard him say at the spring that Lockett had built a dwelling house on the land. When I went to see Mims at his

lower or mill place, to get in with him, he would not employ me without consulting Lockett. He said he had given him a plantation up there. Did not know who put up the improvements. Mims employed the witness as an overseer, and paid him, and he did not stay there but two or three months; the amount paid was very little; did not remember the time of year he went there.

SAMUEL B. HUNTER, another witness for complainant, said that Lockett was married in 1849. He and his brother were engaged in railroad business on the South Western Railroad. Railroad business was profitable. Lockett came up the year after his marriage and lived the first year with Mims, and in the Spring of 1851 left Mims' and moved on to the land in dispute, and has lived there ever since—about three or four hundred yards from Mims'. Lockett, since his marriage, put up on the land a gin house and screw, two cribs, four or five negro houses, a stable, and a dwelling house, cleared about one hundred acres of land, built lots and made other improvements, worth in the aggregate about $1,900. Lockett used these premises as other neighbors occupied and used theirs. Never heard to the contrary that Lockett owned the land until this suit. The place was worth $10 00 or $12 00 an acre, and there was between six and seven hundred acres.

*Cross-Examined*—Said he did not know what buildings before or what after the marriage; thinks there were some small improvements on the place before the marriage. He derived his knowledge from knowing the place; cannot swear that Lockett put any house on the place except the gin house; never saw any body put the other houses there. The gin house is framed and shingled, and weather-boarded up; there is a screw there; gin house alone is worth $400 00.

While this witness was under cross-examination, counsel for defendant proposed the following question: "What was the value of the rent of the lands and the use and occupation of the premises so testified to have been in the possession of the complainant, per annum, during the time that he, complainant, has held possession of the same?"

To this question, counsel for complainant objected, and the

Court sustained the objection; on the ground that it was not legally competent in the case before the Court to set-off the value of such of the improvements as were made by the complainant on the lands, with the value of the rent of the lands, and the use and occupation of the premises, and that the reception of the rents, issues and profits, by the complainant, could not defeat a parol gift of land, consummated by part performance.

To this decision, counsel for defendant excepted, and thereupon consented that a decree might be taken in favor of complainant, and a decree was accordingly rendered by the jury in favor of complainant for the premises in dispute.

The direction given to this case, on the trial in the Court below, relieves it from many of the embarrassing questions that usually arise upon applications for specific performance of parol agreement in respect to land, and narrows the whole case down to a single question, that is, conceding all that is claimed by the complainant, in his bill, to be true, that is, that there was such an agreement and that complainant, with reference to that agreement, was admitted to the possession of, and made valuable improvements on, the land, and used and occupied it under that agreement for several years, for the consent to the decree, on the refusal of the Court to allow the question to be answered, conceded so much and dispensed with any proof in support of the bill. Whether the complainant is not concluded by the statute of frauds if the advantages or benefits received or realized by him during the time, from the rents, issues and profits equal or exceed the value of the improvements put on the land by him? The affirmative of that proposition is maintained by counsel for plaintiff in error, who rest their case on the argument that if it be true that the complainant has been fully compensated for all loss and damage he has sustained by his possession, labor and improvements made and expenses incurred on the land, in faith of this agreement by the use of the land, there can be no authority or reason for a departure from the statute, but that the statute must obtain in it and all cases, except

when it would be a fraud on the party not to enforce it, and that there can be no fraud when there is no injury done.

As strong and plausible as this view appears, we cannot adopt or enforce it. The general, in fact, the universal rule is, that Courts of Equity will decree a specific performance of a parol agreement in respect to land, (except, of course, in those Courts or places, such as North Carolina, where part performance will not take the case out of the statute,) where the purchaser or donee has been admitted to the possession, and made valuable improvements on the faith of and under the agreement, and when these facts appear there is not an exception to the rule. Compensation is never allowed in these cases to excuse the performance, whether in money or other thing, because the party has so far executed his part of the agreement as to entitle him to an execution, and compensation in lieu of that, is not what he contracted to have. All the Courts require is proof of the agreement, and that it has been so far partly executed as to let the purchaser into the possession under it, and that he has made valuable improvements on the land, and a performance will be decreed. To allow parties, in avoidance of this rule, to go farther and inquire whether injury has in fact resulted, or whether the corresponding benefits already received have not fully compensated for the change of possession and improvements, in order to bring the case back within the operation of the statute, would be to inaugurate an entirely new rule on this subject, and add greatly to the complication of this already embarrassing question, and would be wholly changing the rights of the party under the agreement. Such an inquiry would always arise in those cases where a bare possession is relied upon to take the case out of the statute, and that has always been held to be sufficient for that purpose, yet the inquiry never has been gone into, or if so, has universally been disallowed by the Courts. The question of compensation in lieu of specific performance has been considered, and while the Court of Equity has regretted, when it was practicable, that it had not been adopted, rather than that of specific performance, (Foster vs. Hale, 3 Vesey, 696,) yet

Mims *vs.* Lockett.

the rule was too well settled to admit of it, except only in those cases where payment of the purchase-money was relied on as part performance; and I take it, that the reason of that is, that when the thing done is the payment of money, that can always be measured, and its exact equivalent returned, and when the possession is changed or improvements made, the value of these things must always be matter of opinion merely, and cannot be measured or exactly ascertained so as certainly to put the party making them in the same condition he was. In this case, the complainant had entirely changed his occupation, gone into the possession of the land, remained there in its use, cultivation and improvement from 1849 to 1856, on the faith of the agreement that it was his, and a possession in which he could not be disturbed but by his own act. In such a case, would it not be the merest speculation as to what would or would not be a compensation to him in lieu of the land itself with its improvements? And would it not be a gross fraud on him to require him to take a compensation in lieu of that which he was led to believe, under the agreement, he was to receive? "A party who has permitted another to perform acts on the faith of an agreement shall not insist that the agreement is bad, and that he is entitled to treat those acts as if they never existed." Morphet vs. Jones, 1 Swanst., 131.

There is another reason that occurs to me as entitled to much consideration, in opposition to the principle insisted upon here, though I have not seen it in the books—that is, when a party has placed himself in a position to ask for a specific performance, either by possession or improvement, the thing, that is, the land, is his, or at least he is entitled to a conveyance, a specific performance, at that time, and the rents, profits, issues or benefits accruing to him from its use and occupation from that time are his, and not that of the vendor or donor; and when he is asked or required to appropriate these things or benefits in compensation for his labor, improvements and expenses, he is asked or required to compensate himself with that which is his own, and for which he is supposed to have entered into the agreement.

But whether we have given sound reasons for denying the principle maintained by counsel or not, there is one that must be satisfactory, and that is, that the Courts of Equity have adopted these things—a change of the possessions and valuable improvements made on the faith of the agreement—as tests of the right of a party to the enforcement of a verbal contract for land, and we are not disposed to entrench upon or impair that rule. There are some adjudications upon the direct point made which are most decidedly against the position of the plaintiff in error. Young vs. Glendenning, 6 Watts, Pa. Report, 509, was an action of ejectment for land, the title to which had been in plaintiff, and the defendant alleged that he had made a parol gift of the land to him. The Court had charged the jury upon the evidence: "If you are satisfied that the plaintiff made a parol gift and possession was taken in pursuance of the gift and valuable improvements made, and that Young has not been fully compensated, then your verdict will be for the defendant." Upon a review of this charge the Supreme Court of Pennsylvania decided that " The direction was, that the compensation for improvements by perception of profits may be a bar to specific performance of a gift." On that ground the equitable title would always be defeasible, for a time must come when compensation will be complete, and the right of the donee would depend on the time when he called for the conveyance. Nor would equity be bound to help him to it, though called for at the earliest period, as it would be sufficient to protect his possession till satisfaction should be had from the land. But whatever room for objection to specific performance there might originally have been, there is no rule of equity better established than that encouragement to go on with improvements under an expectation of a conveyance, is a ground to disappoint the deceiver by compelling him to realize the expectation he has raised. Compensation is the opposite of performance, and so treated by Lord Alvanly, 3 Vesey 713, who, in objecting to the original course of the Court, thought that compensation, instead of execution, ought to have been the redress in all cases. Slight and temporary erections

for the tenant's own convenience doubtless give no equity, but permanent improvement give an indefeasible title to have the contract executed. So in Syler vs. Eckhart, 1 Benning, 378, when the father had made a parol gift of land to his son, who had gone into possession and made valuable improvements on the land. The Court held that, "Although the Courts are not disposed to extend the principles on which parol agreements conveying lands have been confirmed further than they have already been carried." It has been settled that when a parol agreement is clearly proved, in consequence of which one of the parties has taken possession and made valuable improvements, such agreement shall be carried into effect. We see no material difference between a sale and a gift, because it certainly would be fraudulent in a parent to make a gift which he knew to be void, and then entice his child into a great expenditure of labor of which he meant to reap the benefit himself. The same principle was ruled in Huges vs. Walker, 12 Pa. State Rep, 173. In opposition to these authorities and principles I can find but this opposing dicta, referred to in Counsel Brief. "It must appear, however, that the loss of his improvements would be a sacrifice to the purchaser. If therefore he has gained more by the possession and use of the land than he has lost by his improvements, or if he has been, in fact, fully compensated for the improvements, they will not be available to him as a ground for specific execution." The cases of Wack vs. Sarber, 2 Wharton, Pa. 387, and Eckert vs. Eckert, 3 Pa. R., 332, are referred to in support of the text; and on reference to the cases it will be seen that they do not support it. In the one case—that of Wack vs. Sarber—it was a parol gift of land, and the improvements relied on were trivial and but for temporary purposes. Those were held insufficient. And in the other, Eckert vs. Eckert, the parol contract sought to be enforced, was made *after* the possession of the land and after the improvements made. This has always been held insufficient, for the possession and improvements must be subsequent to the contract and in pursuance of it; hence we cannot regard this dicta as of the slightest weight.

We do not say that we go to the whole length of these decisions from Pennsylvania, that is, to sustain a naked parol gift of land to a mere stranger, for the only reason that such person, in confidence of such gift, has gone into possession and made improvements, for which he has since been reimbursed by the use of the lands, etc. Nor do we say that we would not, on a proper case, go so far. It is not necessary that we should in this case decide so much, for that is not this case. It is neither a naked parol gift, nor is it to a stranger.

Let the judgment be affirmed.