## MOORE v. GORDON.

1. PARTITION: *None for land adversely held.*

   A party claiming the legal title to an undivided interest in land cannot maintain proceedings for partition with his co-tenant while his interest is held adversely by others. He must first establish his title at law.

2. SPECIFIC PERFORMANCE: *Parol contract: Part performance.*

   Possession of land by the purchaser, to constitute part performance of a parol contract of sale, must be taken under the contract and with a view to it and in pursuance to its provisions.

3. SAME: *Proof of the contract.*

   Specific performance of a parol contract for the sale of land will not be decreed unless it be clearly proven, its terms definitely shown by a decided preponderance of evidence satisfactory to the Chancellor, not only as to the fact that a contract was made, but also as to its precise terms.

4. SAME: *Part performance: Making improvements.*

The making of improvements on land by the purchaser as owner under a parol contract of purchase is an independent ground for specific performance of the contract, unless the improvements be of a transient nature, or of so little value as to be paid for by the temporary enjoyment of the land.

APPEAL from *Phillips* Circuit Court in Chancery.

Hon. M. T. SANDERS, Circuit Judge.

*Stephenson & Trieber* for appellant.

Before a court of equity will decree a specific performance of a parol contract for the sale of land the contract must be *clearly and conclusively* proven; must have been partially performed, and the acts of part performance must be referable to and done under and in consequence of it. *39 Ark., 429; 4 Wall., 513; 21 Ark., 279; 13 Penn. St., 16; 1 Johns. Chy., 131; 3 Ves., 381; 1 Bailey Eq., 118; Freem. Ch., 290; 5 Md., 184; 5 Rich. Eq., 170; 3 S. & R., 543; 14 Pa. St., 260; 53 Am. Dec., 538 and note.*

Appellee was *in possession* when this contract is alleged to have been made. *Supra.*

As to the improvements made, if appellee has gained more by the possession and use of the premises than the improvements amount to, they are no ground for specific performance. *Browne on Stat. Fraud, 5490, and cases cited.*

*Tappan & Hornor* for appellee.

The preponderance of the evidence decidedly shows that the trade was made, that appellee paid the consideration as agreed upon, took possession and made valuable improvements under claim of ownership. This entitled him to specific performance. *16 Ark., 367; 21 Ib., 116; Ib., 137; 15 John., 15; 2 Caine's Cases, 87; 5 Wend., 638; 2 Story Eq., 763.*

EAKIN, J.  Moore, claiming an undivided interest in
two lots in the town of Helena, on the eighteenth of April,
1883, filed a petition in the Circuit Court against Laura M.
Leach, the undisputed owner of the remaining interest,
seeking a partition.  He alleges that said Laura and one
Emmet Baldwin were tenants in common of the property;
and that on the fifteenth of May, 1876, said Baldwin con-
veyed his interest to petitioner, who has been since, and
is now, the lawful owner of that interest.  The lots are
described in the petition as being numbered 511 and 512
in "Old Helena."  The deed from Baldwin to Moore, ex-
hibited, contains other property and lands, together with
lot 511, but does not include lot 512, either expressly or
by any recognizable description.  This may be a clerical
error, as the parties throughout treat the deed of Baldwin
as conveying to Moore the undivided half of both lots.
No point being made as to this we will so regard it.

Mrs. Leach, in her answer, admitted the former joint
ownership of herself and Emmet Baldwin, who was her
brother, and that Baldwin had conveyed his interest to
Moore as alleged.  But she denied that Moore was then
the owner of that interest, saying that it belonged to Rob-
ert Gordon, who was in possession, claiming to be the
owner.

Petitioner demurred, generally, to the answer.  The
court overruled the demurrer; and because it appeared
that Gordon claimed an interest, ordered that he be made
a party.  Whereupon, he appeared by attorney and filed
an answer and cross-complaint, and the cause was trans-
ferred to the equity docket.  The answer admits the sale
from Baldwin to Moore, but sets forth that, at the time
defendant, Gordon, was in the quiet, adverse and peaceable
possession of the lots, and had so continued for more than
seven years before the commencement of the suit.

The equitable counter-claim set up is, in substance, that about the year 1879 defendant, Gordon, being in possession of the lots, agreed with Moore to sell him a tract of land in Giles County, Tennessee, which was bound to one Jarman for a debt of ——— dollars, in consideration of which Moore agreed to convey him the interest in the Helena lots, and to pay off Gordon's debt to Jarman. Gordon, on his part, agreeing further to repay to Moore the taxes which had been paid by Moore on said lots for the years 1876, 1877 and 1878. The terms of the trade were fully agreed on both sides, and deeds were to be exchanged. Defendant alleges that he remained in possession and paid to Moore the back taxes as agreed, and offered to execute to him a deed for the Tennessee lands, but was told by him that he preferred to obtain his title through the trust deed in favor of Jarman. To this defendant acceded, being desirous that Moore should have such title as would be most satisfactory to himself. Thereupon the lands were sold under the trust deed and bought in by Moore, who received a deed and thus perfected his title. Having fully performed his part, defendant alleges that he requested of Moore a deed for the Helena lots, which was prepared by Moore and retained for proper execution by himself and wife; but that he put the defendant off from time to time with one excuse or another and never did deliver it, never denying, however, that he had sold the lots to Gordon, or that they had been paid for. At that time the parties were copartners, as merchants, at Helena, and defendant says there was between them such mutual confidence that he did not deal with Moore with that strictness and rigidity he would have used with a stranger. He denies that complainant has any further interest in the lots, and prays that his own title be decreed, and that the partition be denied.

22

All the material allegations with regard to this counter-claim were denied. The cause was heard upon the pleadings and depositions, and the Chancellor found: That Gordon, in December, 1879, purchased of Moore an undivided half in the lots and went into possession under said purchase; paid in exchange certain lands in Giles County, Tennessee, which complainant took, charged with a certain debt due Jarman, and repaid to Moore the taxes upon the lots for 1876, 1877 and 1878. Further, that complainant, Moore, was in the possession and enjoyment, as owner, of the Tennessee property. Whereupon, the court held the defendant, Gordon, to be in equity entitled to a specific performance of the contract of sale, and decreed his right as against Moore to an undivided half of the lots, with all his costs. From this decree the complainant in the original petition appealed. The hearing had been upon cross-bill and answer, and no decision was made upon the original petition for partition.

1. PARTI-
TION:

None for
land held
adversely.

The answer of Mrs. Leach was a complete defense to the suit for partition. It represented that the interest claimed by Moore was also claimed by Gordon, who was in possession, holding as owner, and adversely. The title under which Moore claimed was cognizable at law, and he could not maintain a suit for partition until he had established it at law. The proceeding for petition cannot be made a substitute for ejectment to recover an interest in land held partially by others.

By consent of all parties, however, or at least without objection, the court allowed Gordon to appear for his own interest, who set up claim to an equitable title, not cognizable at law. The court having thus obtained jurisdiction of the subject matter, might properly retain it for all purposes; and, if it had found the equitable claim of Gordon to be invalid, might have retained the cause for par-

tition also. After the appeal was prayed, we suppose the complaint for partition was retained to be in the case if the decree should be reversed and remanded. No superior court should presume that its action may be reversed, and upon that account leave a decree in an unfinished state, for there may be no appeal perfected, or it may be dismissed. It followed, upon holding that Moore had no right in the land, that the decree should have closed the whole matter and dismissed the petition for partition. A reversal here would open all.

Passing these points of practice, which are noticed for the preservation of good form, we find that this appeal questions principally the finding of the court as to the facts. In one respect we think the view taken by the Chancellor was erroneous. Gordon did not take possession of the lots, in any true sense, by virtue of or in pursuance of the contract of purchase. He had married the daughter of Mrs. Leach, and had been living upon the lots with her for some time before the parol purchase, and was then as fully in possession as he ever became. His possession, under the circumstances, could form no element of itself in his equity for a specific performance. Possession to have that effect must have been taken *under the contract* and with a view to it, and in pursuance of its provisions.

2. SPECIFIC PERFORMANCE: Part performance.

But a right to specific performance may arise from other facts besides possession, under the doctrine of part performance of a parol contract. The doctrine is general in its application, and was devised to prevent the perpetration of fraud under cover of the statute of frauds. It is based upon this principle, says Mr. Bispham, "that where a contract is so far performed that the parties could not be restored to their original position if the contract be rescinded, it would be highly unjust to allow any technical objection to the fulfillment of the contract to be interposed."

We must look, then, to see if there be anything else connected with this continued possession which will bring this case within the principles established for relief.

3. SAME: Proof of the contract. First, as to the contract of sale itself, the rule is that it must be clearly proven. Its terms must be definitely shown. We do not conceive that the matter must be proved beyond reasonable doubt in the criminal sense, but fairly made out, by decided preponderance, in a manner to be satisfactory to the Chancellor, not only as to the fact that a contract was made, but also as to the precise terms. In this case it is shown by the testimony of the counter-claimant, Gordon, corroborated in many points by several unimpeached witnesses, that there was a contract to sell the lots to Gordon, and the consideration and the terms are definitely shown. That is to say, Gordon agreed to convey to Moore a tract of land in Giles County, Tennessee, burdened with a debt to Jarman, of a little over $1,000, and also to repay Moore the taxes on the lots, which he had discharged for the years 1876, 1877 and 1878. Moore, on his part, agreed to convey the lots in question to Gordon, or his half interest in them. If the contract can be considered as proved at all, the terms are very definite. There is no obscurity there. We think the evidence preponderates to show that there was such a contract made in good faith in 1879. It is not uncontradicted. The complainant denies it. But he may mingle his recollections of his original views with his subsequent determinations, and may honestly have forgotten after several years what precisely had been determined. The other witnesses, with attendant and subsequent circumstances, make it most probable the contract was made, and we think, upon this point, the Chancellor did not err.

Moore v. Gordon.

Then as to the facts constituting part performance, they 4. SAME: Making show that the counter-claimant, on his part, acted in pur- improvements. suance of the contract, and endeavored to carry it out. Did all in his power. According to his testimony he offered to make a deed to the Giles County land, and did reimburse Moore the amount of the three years' taxes. He says, and the facts render it probable, that Moore preferred to obtain title by causing the execution of the deed of trust and purchasing under the sale. Gordon assented to that mode, and allowed it to be done. He owned the equity of redemption, and, in effect, ceded that by his acquiescence. The object being simply to allow Moore to get title after the fashion he preferred. We cannot say that Gordon could not have made an arrangement with Jarman and saved his equity. Gordon did more. He remained in possession of the lots claiming them as his own, which indeed would not be sufficient in itself, but he made valuable improvements. This is an independent ground for specific performance of a parol contract regarding land, unless the improvements be of a transient nature, or of so little value as to be considered as compensated by the temporary enjoyment of the land. There is nothing to indicate that they were of this nature. They were permanent and valuable and the benefit of Gordon's occupation very uncertain. Whether he was on as the head of the family, or as the guest or the boarder of his mother-in-law, is not quite certain, although there is some evidence that he furnished the supplies in whole or in part. But that is of no consequence. The improvements made were of more value than any proved benefit, and they were made under claim of ownership. Of these facts the evidence tends to show that Moore was aware. At least there is every fair presumption from his residing in the same place, and his connections with Gordon and his family that he did know them.

The doctrine expressed in the case of *Mims v. Lockett,*
*33 Ga., 9,* is quoted with approval by an eminent modern
writer on equity jurisprudence. (*Pomeroy on Contracts,*
*sec. 129, n. 5.*) It is this, that "possession and the making
of improvements by the vendee are a sufficient part per-
formance of a verbal contract of sale, without regard to
the amount of benefits received by the vendee from the
use of the lands, in comparison with the sum expended
by him for improvements."

The same writer cites numerous cases (*Ib., sec. 126*) to
sustain the general proposition that " the making of valu-
able improvements on the land by the vendee or lessee, in
pursuance of the agreement, and with the knowledge of
the other party, is always considered to be the strongest
and most unequivocal act of part performance by which a
verbal contract to sell and convey, or to lease is taken out
of the statute."

It is to be observed that where possession alone is relied
on, then the principle applies that the possession must
have been taken under and in pursuance of the contract.

The equity which arises from improvements made
under the claim of ownership is independent of that
which arises from merely taking possession under and by
virtue of the contract. Thus in *Guynn et al. v. McCauley et*
*al., 32 Ark., 116,* possession was taken in pursuance of a
verbal gift, which of itself being purely voluntary, would
not have raised an equity for specific performance. It was
held that the making of valuable improvements did.

In the recent English case of *Williams v. Evans, L. R.*
*Eq., 19, p. 547, 13 Moak Eng. Rep., p. 490,* a tenant already
in possession made a verbal contract with his landlord for
a thirty-year lease, and made improvements on the faith
of it, or had them made by a sub-lessee. It was held that
he was entitled to specific performance, by virtue of the

improvements, although in that case he was in possession when the contract was made.

The improvements made by Gordon in this case could have been made in no other conceivable view than to improve the property which he claimed as his own by the verbal contract, and the proof shows that he claimed to be owner at the time.   We think upon principle and authority, if the facts found be true in other respects save that of his having taken possession under and by virtue of the contract, which he certainly did not, he was nevertheless entitled to specific performance.

Besides, leaving the improvements out of the question there would be strong reason to sustain his equity, on the ground that the parties could not be put *in statu quo*, if Moore were allowed to repudiate the verbal contract.   If the facts as found by the Chancellor be true, and we think they are sustained, then it would be a fraud in Moore to decline, under the peculiar circumstances, to carry out the contract.

Ordinarily the payment of the purchase money, or other consideration by the vendee, will not be such part performance as will raise an equity to have the contract perfected. Money or property of no peculiar value may be recovered or compensated.   Mr. Bishpam thus qualifies the rule :

" But mere payment of the purchase money is not enough, *unless, indeed,* owing to peculiar circumstances, the purchaser cannot be restored to his original position by repayment."   It would be attended with difficulty and embarrassment to do that in this case.  The money paid by Gordon for taxes might indeed be refunded with interest.   His improvements might perhaps be assessed and compensated, but how is he to be restored again to his title to the Giles County land, free to sell them subject to the incumbrance, or to pay it off and keep them ?   The

title by his agreement has been passed under the machinery afforded by the deed of trust, and the incumbering debt has been extinguished. The court of Phillips County cannot make any direct order divesting title to Tennessee lands, and it would be embarrassing to determine what kind of conveyance it should compel Moore to make, in order to restore the old status. True, some *cy pres* scheme might be devised, and we make no decision on this point. But any scheme would be in some respect inadequate, and the consideration of the matter strengthens the equity of Gordon for specific performance. Under the preponderance of evidence as to the facts, the relief afforded by the Chancellor is the most obvious, immediate, just and satisfactory.

Let the decree upon the counter-claim, answer and depositions be affirmed, and the original petition be dismissed. There is no object in retaining it.