PHILLIPS *v.* JONES.

Opinion delivered April 15, 1912.

1. SPECIFIC PERFORMANCE—REPURCHASE OF MORTGAGED PROPERTY.— Where a mortgage was foreclosed and the property sold prior to passage of Kirby's Digest, section 5420, giving the mortgagor the right of redemption, the purchaser's title became absolute; and where the purchaser subsequently agreed to reconvey the property to the mort-

gagor, the remedy for enforcing such contract is an action for specific performance, and not for redemption. (Page 555.)

2.   SAME—WHEN DECREED.—Specific performance of a contract will be decreed only where a decided preponderance of the evidence shows, not only that the contract was made, but also its precise terms. (Page 556.)

Appeal from Jefferson Chancery Court; *John M. Elliott,* Chancellor; affirmed.

### STATEMENT BY THE COURT.

This suit was instituted in the Jefferson Chancery Court on July 29, 1904, by Emily Phillips against W. D. Jones, and the purpose of the suit was to compel Jones to convey to Emily Phillips lot 1, block 10, Woodruff's Addition to the city of Pine Bluff, Arkansas. This is the second appeal in this case. The opinion of the former trial is reported in 79 Ark. p. 100, styled *"Phillips* v. *Jones."* There the court held that: "A bill for specific performance which alleges that plaintiff occupied and formerly owned the land as mortgagor in possession, that while she remained in possession after foreclosure defendant agreed to resell her the land for a stated sum, and that she continued in possession, paid the the taxes, made valuable improvements, and paid part of the agreed price, states such part performance as takes the case out of the statute of frauds."

On the 8th day of April, 1890, Eliza Demby conveyed to her daughter, Emily Phillips, thirty-five feet off the south end of lot 1, block 10, Woodruff's Addition to the city of Pine Bluff. This deed was filed for record June 6, 1890. On 1st day of March, 1893, Eliza Demby executed a mortgage to lot 1, block 10, Woodruff's Addition to the city of Pine Bluff to the Southern Building and Loan Association to secure the sum of $500 which she owed to the association. On the 8th day of January, 1896, Eliza Demby conveyed to Emily Phillips all of lot 1, block 10, Woodruff's Addition to the city of Pine Bluff except thirty feet off the south end of said lot, which had been previously conveyed by her to the said Emily Phillips. In 1896 Emily Phillips executed a mortgage on said lot 1 to Foster & Coleman to secure the sum of $250 which she owed them. This mortgage was foreclosed in the chancery court, and W. D. Jones became the purchaser under the foreclosure sale for the sum of $298.60. The sale to him was confirmed

by the chancery court on the 12th day of October, 1897. The mortgage given by Eliza Demby to the Building and Loan Association was foreclosed in the Federal court, and said lot 1, with the exception of thirty feet off of the south end thereof, was sold in satisfaction of the mortgage debt. Sam Bloom became the purchaser for the consideration of $564.94. The sale to him was confirmed on the 6th day of March, 1901. Afterwards, on March 11, 1901, Sam Bloom conveyed the property so deeded to him to Bessie I. Bloom and the defendant W. D. Jones.

On the 23d day of April, 1901, W. D. Jones conveyed to Bessie I. Bloom an undivided one-half interest in thirty feet off of the south half of lot 1; on July 26, 1902, the said Bessie I. Bloom conveyed all her interest in said lot 1 to E. B. Bloom, one of the defendants herein.

The plaintiff alleges in her complaint that W. D. Jones, shortly after the conveyance to him of said lot 1 under the foreclosure decree of the chancery court, agreed that if she would pay him the amount he had paid out he would convey the property to her. She alleges that she was then in possession of the property, and paid to him the sum of sixty dollars on the purchase price, and he agreed with her that if she could pay the balance of the stipulated price within thirteen months he would convey the property to her. That during the same year she tendered to him the balance of the purchase price, and that Jones refused to convey the property to her. The defendant Jones filed an answer in which he denied all of the material allegations of the complaint. He averred the truth to be that on May 18, 1898, he agreed by oral contract to convey to Emily Phillips thirty feet off the south end of lot 1, block 10, Woodruff's Addition to the city of Pine Bluff, in consideration of the payment to him of $382.50; that $60 of the purchase price was paid at the time, and that it was understood and agreed between him and Emily Phillips that, in the event she failed to pay the balance of the purchase price within twelve months of the contract, the $60 paid by her should be considered as rents, and her rights to purchase should be forfeited; that the said Emily Phillips failed to pay the balance of the purchase price within the time designated in the contract.

Plaintiff, Emily Phillips, testified: Shortly after Judge

Jones bought in the property in controversy at the fore-
closure sale, he told me that he had bought it in for me, and
for me and my girls to go to work and pay him. I told him I
was going to the Territory, and asked him his address where
I could send the money to him. He told me I would have to
pay him $382.50. I made him a payment of $60 for which
he gave me a receipt. The receipt is as follows:

"$60.                    "Pine Bluff, Ark. May 16, 1898.
    "Received of Emily Phillips $60 on acccount of mtg.
        (Signed)                    "W. D. Jones."

He said he would allow me thirteen months to pay him.
The land was sold to Judge Jones in October before the date
of the receipt. Some time during the same year in which I
got the receipt, I think in September, 1898, I went to Judge
Jones and tendered him the balance of the $382.50. He re-
fused to take it, and said that the place belonged to him. I
was in possession of the property at the time I made the con-
tract with Judge Jones, and afterwards I made some improve-
ments on the property which cost me $20 or $30. After the
foreclosure by the Building & Loan Association in the Federal
court, a writ of possession was issued, and I was put out of the
possession of the property by a deputy United States marshal.

Alice Moore, a daughter of Emily Phillips, testified in
substance as follows: I remember the time my mother got
the receipt from Judge Jones testified to by her, for she showed
it to me after she got it. About three months after she got
the receipt my mother carried some money and offered it to
Judge Jones. His office at that time was in the back part of
the courthouse. She offered him $322.50. She went into
the office, and asked him if he was ready to take the money,
and he said: "No, I am not ready to take it," and asked her if
she had borrowed it; he said if she had borrowed it he would
not take it, and said that he had just as well gobble up the
place as anybody else. I was with my mother when she offered
him the money. I did not hear her say in my presence what
she was offering the money for. She just asked him if he was
ready to take the money. I knew that she was offering it to
him to pay off the mortgage on the property in question.

M. C. Cross testified: Emily Phillips borrowed money

from me on one occasion which she said was to pay a balance, I believe it was, of $322.50 which she owed Judge Jones, to pay off a mortgage on the property in question. I gave her the money, and she went toward the courthouse. I did not see her make a tender of the money to Judge Jones.

Eliza Phillips, a daughter of Emily Phillips, testified in substance: I know that my mother paid Judge Jones $60 on the property in question. I heard him have a conversation about the property with my mother at her house. He told her that he had bought her place in for her, and for her to go to work with me and the girls to pay him his money back. He said he would give us thirteen months to pay the money back. My mother afterwards borrowed $322.50 from Mr. Cross and tendered it to Judge Jones in payment of the balance of the purchase money.

W. D. Jones, one of the defendants, testified: This woman, Emily Phillips, came to me and began negotiations for the purchase of the south thirty feet of lot 1, block 10 of Woodruff's Addition. She understood that the balance of the lot was mortgaged, and that she had no way to pay it off. I told her that I was out $298.60 on the property, and that if she would pay me $325.50 I would let her have it. She said that she did not have $325. Then I told her that if she would pay me the $325 within twelve months I would convey the property to her, but I expressly stipulated that it was not a sale; that it was simply a contract of sale, and that if the $325 was not paid within twelve months she had no rights whatever. That was expressly understood. I did not tell her that she might be permitted to redeem the property, but simply gave her an option to purchase, and that was to have been consummated in full in twelve months from May 16, 1898. She brought me the $60 two or three days after that, but it all occurred within two or three days. It was positively understood between us this was not the purchase money on the property, except for the fulfillment of her agreement to pay the entire $325 within twelve months, and the $60 that was paid to me at the time was paid with the understanding that that would be at the rate of $5.00 a monthly rental, and that if the balance of the $325 was not paid within twelve months

that the $60 was to be appropriated as rent for the property during that time.

"Q. On May 16, 1898, when you accepted the $60, would you have undertaken to sell her the entire lot at all, and, if so, for $325?

"A. I certainly would not. I would not have obligated myself at all to convey the entire property to her, because that would have bound me to have taken care of the Building and Loan Association mortgage, which, alone, was for $500. I never stated at any time to Emily Phillips that I had bought the property in for her and her girls. If she had paid me the $325 within a year, I would have conveyed the south thirty feet to her. She never tendered that amount to me at any time."

The chancellor found in favor of the defendants and dismissed the complaint for want of equity. The plaintiff has appealed.

*Crawford & Hooker*, for appellant.

*Taylor & Jones* and *A. H. Rowell*, for appellees.

HART, J., (after stating the facts.) This is a suit to enforce the specific performance of an oral agreement to convey real estate, and not a suit to redeem from a mortgage. "Specific performance enforces a contract by giving a party something to which he had not title before. Redemption gives a party nothing new, but enforces his right to repurchase his own, incumbered for a debt. Redemption restores the parties to their former rights of property. Specific performance gives them new rights to property." *Williams* v. *Williams*, 50 Wis. 311-16, 6 N. W. 814.

Section 5420 of Kirby's Digest, giving a mortgagor the right of redemption, was passed May 8, 1899. The property in question in this case was sold under mortgage foreclosure prior to the date of the passage of this act. The foreclosure proceedings were had and the sale made to Judge Jones in October, 1897. Hence, at the time the alleged contract, which is the basis of this suit was made between Emily Phillips and W. D. Jones, the title had been divested out of her by the foreclosure proceedings in the chancery court, and she had no right of redemption. The title to the property at that time

was vested in W. D. Jones by virtue of the sale to him under the decree of foreclosure. It follows then that this is a suit to enforce the specific performance of an alleged oral contract for the purchase of real estate. The plaintiff states that she was in possession of the property at the time the alleged oral contract was made, and paid $60 on the purchase price. The law applicable to the case before us is aptly stated as follows:

"As to the contract itself, the rule is that it must be clearly proved; its terms must be definitely shown. We do not conceive that the matter must be proved beyond a reasonable doubt in the criminal sense, but fairly made out by decided preponderance in a manner to be satisfactory, not only as to the fact that a contract was made, but also as to the precise terms." *Moore* v. *Gordon,* 44 Ark. 334.

In the case of *Fielder* v. *Warner,* 78 Ark. 158, this principle was stated as follows:

"A court of equity can not make a contract for parties and then decree its specific performance, in order to carry out its notion of what the abstract justice and right of the case as disclosed by the proof demands. The court will only decree specific performance when the contract itself is clearly established by a preponderance of the evidence." The court then approved the quotation we have made from the case of *Moore* v. *Gordon.* See also *Tatum* v. *Bolding,* 96 Ark. 98.

In the application of these principles to the facts in the present case, we are led to the conclusion that the decision of the chancellor was correct. It is true that the plaintiff, Emily Phillips, and her daughter, Eliza Phillips, testified that Judge Jones told Emily Phillips that he had bought her place in for her, and would give her thirteen months within which to pay him his money back. But this testimony on their part is flatly contradicted by Judge Jones. It is claimed by counsel for the plaintiff that her testimony is corroborated by the receipt which was given by Judge Jones at the time she paid him the $60, but we do not agree with their insistence in this respect. The receipt simply states that he received $60 on account of mortgage. Now, Judge Jones testifies that he only agreed to sell her thirty feet off of the south end of the property which he had purchased at the mortgage foreclosure sale, and in this respect we think that he is corroborated by

other facts and circumstances in the case.   Judge Jones states that the remainder of the lot, except the thirty feet off of the south end, was incumbered by a mortgage to the Building and Loan Association for something near its value, and for this reason was not included in the oral contract of sale.   It will be noted that Eliza Demby conveyed to her daughter, the plaintiff, the thirty feet off of the south end of the lot in 1890, and that deed was at that time filed for record.   It is true that in 1893 Eliza Demby mortgaged the whole lot to the Building and Loan Association; but, as she already parted with the title to the south end of the lot, Judge Jones was right in considering that this property was not properly included in the mortgage. When the mortgage of the Building and Loan Association was foreclosed in 1901, the south end of the lot was exempted from the sale, and only the remainder of the lot was sold in satisfaction of the mortgage.   In 1896 Eliza Demby conveyed the north end of the lot to her daughter, and this conveyance was, of course, subject to the mortgage she had previously executed to the Building and Loan Association.   Hence, we say that the testimony of Judge Jones that only the thirty feet off of the south end of the lot was embraced in the oral contract of sale to the plaintiff was reasonable and consistent with the other facts and circumstances in the case.   He says. that at that time it was considered that the north end of the lot was mortgaged to the Building and Loan Association for its full value, and it was not until afterwards that it increased in value.

It is next insisted by counsel for the plaintiff that the testimony of the plaintiff in regard to the oral contract of sale is corroborated by the testimony of the two daughters of the plaintiff to the effect that their mother in September, 1898, tendered to Judge Jones the balance of the purchase money claimed to be due on the place.   This testimony does not have the effect as independent evidence of establishing the terms of the contract of sale.   Judge Jones says that no such tender was made by the plaintiff, and the testimony could only have the effect of contradicting his evidence in this respect, and could not operate as independent testimony to establish the contract as testified to by the plaintiff.   In other words, their testimony did not in any wise tend to show whether the oral contract of

sale was that testified to by the plaintiff or that testified by the defendant Jones.

The plaintiff is not asking for a specific performance of the contract as testified to by Judge Jones. She is asking for a specific performance of the contract for the conveyance of the whole lot.

After a careful review of the evidence and all of the facts and circumstances considered together, we do not think that she has established the contract which she now seeks to have specifically performed by a decided preponderance of the testimony. She is therefore, not entitled to a decree for specific performance, 'and the chancellor did not err in dismissing her complaint for want of equity.

The decree will be affirmed.