*Dean, Moore & Brazil,* for appellant.

*R. W. Robins,* for appellee.

BUTLER, J. The appellee, Jessie Kellogg, was the owner of an eighty-acre tract of land in Conway county and had contracted to purchase from a bank in Morrilton a 235-acre tract adjoining, commonly called the "First State Bank lands" or "the bottom lands." Appellee owed a balance of about $1,600 to the bank. She had rented both of these tracts for the years 1936 to 1940, inclusive, to the appellant, J. F. Newman, with an agreement that if she should sell the lands the lease contract should terminate and possession be given to the purchaser on the first of the succeeding year. During the year 1936, appellant claims to have entered into a contract with the appellee for the purchase of her interest in the 235-acre tract and instituted this suit for the specific performance of the contract. In the meantime, appellee had sold to a Mr. Sadler the tract involved, and he intervened in the suit, setting up his purchase from appellee and seeking to have his title quieted as to the appellant and appellee, Miss Kellogg. On a trial of the issues, the court below dismissed the complaint for want of equity and confirmed the sale and title acquired thereby in the intervener, Sadler.

The appellant contends that the contract, the basis of his suit, was effected by his acceptance, both written

and verbal, of a written offer by the appellee, Miss Kellogg, to sell to him her interest in the 235-acre tract for $1,000 in cash and the assumption by him of the $1,600 balance due the bank. His testimony is to the effect that early in September of 1936 he wrote Miss Kellogg who lived in Norman, Oklahoma, inquiring if she wanted to sell the ''bottom lands,'' and if so, he would like to buy them. In reply he received the following letter:

''Norman, Oklahoma,
September 9, 1936

''Mr. Newman:

''In reply to your letter of the 14th I cannot say that I really want to sell the places. But I might do such a thing. As you said, the bank does have a first mortgage on the bottom land, so I will have to ask for cash on that place, I have been out around $1,100 for payments, taxes, etc., but if I could get $1,000 cash for the place I would let it go.

''You can see the president of the bank, I am sure he would rather deal with you than myself. There is about $1,600 against the place, some interest from last year, but I will pay that.

''Now about the home place, if you decide to take it I will make as easy payments as possible over any length of time that will be convenient for both of us. You can write me your decision on that after you decide on the bottom land. You can let me know soon about what you think about this offer as I have other correspondence concerning the selling of the places. But will be glad to give you the first offer, as I'm sure you're doing the best you can under the circumstances, everyone has spoken well of you and, even though I do not say so, I do appreciate what you do.

''Jessie Kellogg.''

Appellant testified that he immediately answered this letter accepting Miss Kellogg's offer, but did not keep a copy of the same. After this, about the 18th of September, 1936, appellant made arrangements for the necessary money, and, through the services of an agent, communicated with Miss Kellogg by telephone. Having been in-

formed by said agent that she stated, ''That is all right—go ahead, the place is yours,'' he procured an abstract at the cost of $65 and tendered the $1,000 to a Mrs. Crutchfield, Miss Kellogg's local agent, which was refused. It seems that the appellant was hard of hearing and this explains why he procured the services of another to do the telephoning to Miss Kellogg. This person testified in effect that the appellant about September 18th or 19th brought him a letter, dated September 9th, from Miss Kellogg and requested him to talk to her at Norman, Oklahoma. There seems to have been more than one telephone conversation, but on this point the record as abstracted by the appellant is not clear. The effect of the testimony relating to the telephone conversation is that the person doing the telephoning represented himself to be Mr. Newman and asked Miss Kellogg if she had received his letter and she said she had. She was asked if she had an abstract and answered that she had, that it was at the bank, she had paid $100 for it, and that he could call there and get it. He said, ''All right,'' that he was ready to pay the money, and for her to assign the contract she had with the bank to him and send it to the bank; that she stated she would do so and for the money to be paid into the bank. Later on, the assignment not having reached the bank, Miss Kellogg was again called by telephone and said, ''Have you seen Bess (Mrs. Crutchfield),'' and when told ''No,'' she said that the matter should be taken up with Mrs. Crutchfield. Accordingly, Mrs. Crutchfield was visited and tendered $1,000 which was refused. Other testimony was offered by the appellant to the effect that a prospective purchaser made inquiry of Mrs. Crutchfield, Miss Kellogg's agent, about purchasing the land and was informed by her that Miss Kellogg had already sold the land to Mr. Newman.

The only defense tendered by the appellees was a denial of the allegations of appellant's complaint. Therefore, we need not notice that part of the appellees' argument relating to the sufficiency of the writing in a contract for the sale of an interest in real estate to take the same out of the statute of frauds. It is the contention of Miss Kellogg that no contract was made; first that the

offer contained in the letter of September 9, 1936, was not absolute, but subject to further negotiations; second, that there was no written acceptance nor any positive verbal acceptance by 'phone, but certain conditions were demanded in the 'phone messages which were not acceptable to her and consequently, the negotiations were broken off. Miss Kellogg's testimony is to the effect that no letter was ever received by her written by Newman, or any one for him, in reply to her letter of September 9th, and that the first she heard in response to said letter was by means of a telephone conversation some days later by one representing himself to be Newman who offered to purchase the land for $1,000 and assume the indebtedness due the bank on the condition that she waive the payment of the rent for that year. This amounted to something like $150 or $160. She would not agree to this and when being called again by Newman, or his representative, she told them that she had decided not to sell at that time and wired her agent, Mrs. Crutchfield, to collect her rents, and sometime thereafter Mrs. Crutchfield did so, remitting to her. She denied that she had ever agreed in the telephone conversations to send the assignment to the bank, and denied the statements purported to have been made by her as testified to by a witness for the appellant. Mrs. Crutchfield denied ever having said that Miss Kellogg had sold the land to Newman, and Mr. Sadler testified that before he purchased from Miss Kellogg he was informed by Newman that his attempted trade with Miss Kellogg had fallen through and at that time borrowed from him some money to apply on Miss Kellogg's rent which she was then demanding.

The letter of September 9th might be susceptible of more than one interpretation as it appears to us to be equivocal. It looks as if it is the expression of a woman unused to business affairs preliminary to a definite conclusion and with the implication that she reserved her feminine privilege to change her mind if she wanted to. But if we treat the letter as an absolute and unconditional offer, we are of the opinion that the evidence, as measured by the applicable law, warrants the conclusion reached by the court below. It is necessary that there be,

16

not only an absolute offer, but, an unconditional acceptance thereof within a reasonable time. The rule which governs in cases of this kind is not in doubt; where one seeks to enforce the provisions of an alleged contract, the proof necessary to entitle him to a decree must be such as to establish the execution of the contract and its terms by evidence which fairly and decidedly preponderates in favor of the plaintiff. The cases cited by appellees fully establish this doctrine. *Moore* v. *Gordon,* 44 Ark. 334; *Phillips* v. *Jones,* 103 Ark. 550, 146 S. W. 513; *Williams* v. *Williams,* 128 Ark. 1, 193 S. W. 82; *Tatum* v. *Bolding,* 96 Ark. 98, 131 S. W. 207; *Walk* v. *Barrett,* 177 Ark. 265, 6 S. W. 2d 310; *Ehlers* v. *Rose,* 182 Ark. 131, 30 S. W. 2d 849. The decree of the trial court will, therefore, be affirmed.

Opinion delivered December 6, 1937.