Robert Harrold KINKEAD and Joyce Kinkead *v.*
Carol Ann Kinkead SPILLERS and Jeannine Lea Kinkead Mathis;
Boatmen's National Bank of Arkansas, Intervenor

98-618                                          983 S.W.2d 425

Supreme Court of Arkansas
Opinion delivered January 14, 1999

*Joyce Kinkead,* pro se, for appellants.

*Kemp, Duckett, Spradley & Curry,* by: *Hal Joseph Kemp,* for appellees.

D ONALD L. CORBIN, Justice.  Appellants Robert and Joyce Kinkead appeal the judgment of the Pulaski County Chancery Court ordering a partition sale of land previously owned by Appellant Robert Kinkead and Appellees Carol Ann Kinkead Spillers and Jeannine Lea Kinkead Mathis.  Appellants raise three points on appeal: (1) the chancery court lacked subject-matter jurisdiction to order partition due to adverse possession of part of the land; (2) the sales price of the land was grossly inadequate; and (3) the costs of a second survey should not have been imposed upon Appellants pursuant to Ark. Code Ann. § 18-60-418 (1987).  Our jurisdiction of this appeal is pursuant to Ark. Sup. Ct. R. 1-2(a)(7), as this is the second appeal of this case. We reverse the order of partition.

### Facts and Procedural History

Appellant Robert Kinkead and Appellees Carol Kinkead Spillers and Jeannine Kinkead Mathis owned real property in Pulaski County as tenants in common.  Appellant Joyce Kinkead owned a dower interest in the undivided interest of her husband Robert Kinkead.  Appellees, plaintiffs in the proceedings below, filed a petition to partition the land in September 1994, stating that they and Robert Kinkead were joint owners of the property in question via special warranty deed and the will of Harrold F. Kinkead; that the property was not capable of being divided in kind; and that the property should be sold with the proceeds of the sale to be divided according to the respective interests of the parties: one-quarter (1/4) to Robert Kinkead and Joyce Kinkead; three-eighths (3/8) to Carol Kinkead Spillers; and three-eighths (3/8) to Jeannine Kinkead Stroud.  The property was described in the special warranty deed as follows:

> S1/2 of the NW1/4 of the NW1/4, Section 35, Township 3 North, Range 14 West containing 20 acres more or less.
>
> The South 15 acres of the NE1/4 of the NW1/4.  Section 35, Township 3 North, Range 14 West containing 5 acres more or less.

Tracts 12 and 13, Kinkead, Dunn & Mainard's Subdivision of Part of Section 35, Township 3 North, Range 14 West Tract 12 containing 11.5 acres more or less and Tract 13 containing 10 acres more or less. With the total of the above described property in the aggregate 46.5 acres more or less.

LESS AND EXCEPT any of the above described property lying to the east of the centerline of a railroad right-of-way traversing Section 35, Township 3 North, Range 14 West it being the intent of the Grantors to convey all their interest in property owned by them and having been previously owned by Ewing L. Kinkead lying west of the centerline of said railroad right-of-way.

On May 12, 1995, the chancellor issued an order, pursuant to Ark. Code Ann. § 18-60-414 (1987), appointing three persons as commissioners and directing them to examine the property and file a report recommending that the property be divided according to the shares owned by the parties or, if such division is not possible, that the property be sold pursuant to Ark. Code Ann. § 18-60-420 (1987). On September 22, 1995, the commissioners' report was sent to the chancellor, indicating that the property could not be partitioned in kind. In an order filed on December 27, 1995, the chancellor confirmed the commissioners' report that the property could not be divided in kind and, thus, ordered the property sold. Appellees submitted the highest bid on the property, $155,000, and the property was sold to them. On May 31, 1996, the chancellor received the commissioners' report of the sale of the property and entered an order confirming the sale and finding that the sale was in all respects proper and legal and that the sum bid for the property was adequate. The chancellor directed that a commissioners' deed be executed and delivered to the purchasers, conveying the property to them.

Also on May 31, 1996, Boatmen's National Bank of Arkansas filed a motion to intervene in the action on the ground that it had a judgment lien on all real property owned by Appellants in Pulaski County, including the property that was the subject of the partition. That intervention was the subject of the first appeal to this court, wherein we dismissed the appeal without prejudice for lack of a final order, pursuant to ARCP Rule 54(b). *See Kinkead v. Spillers*, 327 Ark. 552, 940 S.W.2d 437 (1997). Subsequently,

we ordered the chancellor to enter a final order so that Appellants may perfect their appeal. *See Kinkead v. Spillers*, 330 Ark. 711, 955 S.W.2d 909 (1997) (*per curiam*). The chancellor entered the final order in this matter on February 3, 1998, and this appeal followed.

## *Subject-Matter Jurisdiction*

Appellants argue that the chancery court lacked subject-matter jurisdiction to order partition of the land because there was evidence that at least some of the land was being adversely possessed. They contend that the legal description contained in the special warranty deed and reflected on the survey is one contiguous parcel, and that it is uncontroverted that a portion of the property, the exact number of acres being unknown, is in the possession of others and possibly held adversely. They argue that the chancellor thus lacked jurisdiction to order partition of the property until legal title could be established.

The record reflects that on March 22, 1995, the chancellor conducted a hearing to determine whether the land was capable of being divided in kind. Appellants challenged the integrity of Appellees' survey on the ground that a portion of the land described in the deed, the land north of Maple Street, was omitted from the survey. In response, Appellees' attorney conceded that the evidence would show that there is a dispute concerning ownership of the property north of Maple Street, where there were occupied houses. Counsel stated that the property was not included in the survey "because it was clear those houses have been there for years and years." Appellee Carol Kinkead Spillers confirmed this notion, stating that she was not claiming any property that lies across Maple Street because it was her belief that she did not own that property.

The surveyor, Edward Fryar, testified that there were numerous homes on that area of the property that have been there for a long time. Fryar stated:

> These are old houses. And these people, without a doubt, have a claim to that, and I don't — I can't answer for all of them — I don't know how many house[s] are over there; there must be a half a dozen or so.

Fryar stated that it was evident to him that the land was claimed and used by other people. He added, however, that he did not know whether the land was owned by them or by the Kinkeads. Similarly, real estate agent Sam Guenther testified that in the area in question, there were homes that had been there for a long time — one built within the last ten years, and others built within the last five years.

Despite the testimony that part of the property was likely held adversely, the chancellor appointed commissioners to evaluate for partition the entire property, as described in the deed, including that possibly being possessed adversely. The commissioners' report, which ultimately recommended that the property be sold at judicial auction, supports the foregoing testimony:

> 1) The property, according to the description submitted to us, contained 46.5 acres. Upon plotting the description on property maps obtained from the county Assessor's Office, we found that part of the described property actually included a portion of the platted Natural Steps Subdivision as well as several existing single-family homes *which are owned and occupied by people other than those involved in this court action.* [Emphasis added.]

Again, despite this evidence, the chancellor ordered that the entire property be sold at auction. The chancellor reasoned:

> Let me put it this way: I don't think the fact that part of the land is adversely possessed would have any effect on the ability to partition it. Now, if it were all adversely affected that might be otherwise. The issue I think then becomes, what do you do about the adverse possession, and I guess my thought would be that I'm not sure you would do anything. *I think you maybe put it up for sale and let the buyers, you know, buy what the owners have to transfer and worry themselves about any adverse possession,* especially since, while I gather from the papers I have seen that there's a fair amount of agreement about where this adversely possessed land is, *I still don't know, you know, that this Court would have jurisdiction without showing all those on it to actually quiet title and say specifically what are the legal descriptions of the pieces that are adversely possessed. . . .*

. . . .

*I have to admit that the adverse possession is somewhat trouble-some.* But I tend to believe that *I'm going to go ahead and partition what's in the bidding, and anyone who purchases it at a sale purchases it subject to what actually is owned.* [Emphasis added.]

During a subsequent hearing, on July 16, 1996, the chancellor explained that partition was proper in this case because only a part of the land was possibly adversely held:

I don't think there's any doubt that [Appellant Joyce Kinkead is] right on the law, that if a piece of property is held adversely that it cannot be partitioned. On the other hand, the particular circumstances we have in this case, which is that the property is not entirely held in adverse possession.

Appellants contend that the chancellor's ruling was clearly erroneous under this court's holdings that partition may not be had when the land is adversely possessed or when title thereto is in dispute. They assert that the appropriate way to resolve the title dispute is through an action in ejectment, and that the chancery court has no jurisdiction to hear an ejectment claim.

■ ■ We agree with Appellants that it is a well-settled principle that "partition can not be had of lands held adversely or the title to which is in dispute." *Cannon v. Stevens*, 88 Ark. 610, 612, 115 S.W. 388, 388-89 (1908) (citing *Eagle v. Franklin*, 71 Ark. 544, 75 S.W. 1093 (1903); *Head v. Phillips*, 70 Ark. 432, 68 S.W. 878 (1902); *Ashley v. Little Rock*, 56 Ark. 391, 19 S.W. 1058 (1892); *Criscoe v. Hambrick*, 47 Ark. 235, 1 S.W. 150 (1886); *Moore v. Gordon*, 44 Ark. 334 (1884); *London v. Overby*, 40 Ark. 155 (1882); *Byers v. Danley*, 27 Ark. 77 (1871)). We also agree that an action for ejectment lies in law. *Schwarz v. Colonial Mortgage Co.*, 326 Ark. 455, 931 S.W.2d 763 (1996).

■ ■ We do not agree, however, that resolution of the title dispute in this case necessarily mandates transfer to the circuit court for a determination of any adverse claims through ejectment. The matter of adverse possession must be proved; mere possession is not enough. Here, there appears to be no dispute that there are people other than the parties to this partition suit living on the land north of Maple Street. Yet, there is an issue

about whether those people have a legal claim to part of the land based on their holding the property adversely. As this court stated in *Cannon*, 88 Ark. at 613, "Merely setting [an adverse-possession defense] forth in the answer did not defeat the jurisdiction of the court." Thus, until such time as evidence of adverse possession is presented, a transfer to circuit court on a theory of ejectment is premature, as the legitimacy of any potential claim is pure speculation.

Our partition statutes contemplate that persons with any interest in the property be joined as parties to the partition suit. Ark. Code Ann. §§ 18-60-401 to -426 (1987 & Supp. 1997). Section 18-60-401 provides that after a petition for partition has been filed, "all persons interested in the property who have not united in the petition shall be summoned to appear." Similarly, section 18-60-403(a) provides that every person having an interest in the partition, as provided in section 18-60-401, "whether in possession or otherwise," shall be made a party to the petition.

In the instant case, the statutory requirement for joinder of all interested parties was not met. Accordingly, we reverse the order of partition and remand the case with instructions that the chancellor require joinder of those people living north of Maple Street as parties so that any claims they may have to the property can be developed. If it should develop that any of those joined parties are holding the land adversely to the cotenants, then a transfer to circuit court for an ejectment action would be appropriate. *See Head*, 70 Ark. 432, 68 S.W. 878.

Reversed and remanded.

SMITH, J., not participating.