### SMITH and another vs. WOOD and others.

A bill for specific performance of a contract is addressed to the sound discretion of the court, and a contract, to be enforced, must be fair, just and certain, and founded on an adequate consideration, and if deficient in either of these requisites, a court of equity will not enforce it.

A and B entered, at the U. S. land office, forty acres of land, upon a part of which C and D had been mining and taking out lead ore, the two latter having also purchased of one E another part of said tract for $2,500—neither C, D nor E having any right to said land or the ore therein. After A and B made their entry, C and D claimed the land, representing that their *diggings*, and the lot bought of E, were included within such entry; and A and B then executed their bond to convey the land to C and D upon obtaining a patent for it, if it should appear that the lot bought of E was situate thereon. The patent having been obtained, and it appearing that the lot purchased of E was situate upon the land, C and D filed a bill for a specific performance of the contract: *Held*, That the bond was without any consideration, and although under seal, could not be enforced.

APPEAL from the Circuit Court for *La Fayette* County.
Bill for specific performance of an agreement to convey land. The facts are stated in the opinion of the court. The

circuit court found for the plaintiffs, and made a decree ac-
cordingly.

*James H. Knowlton,* for appellants.

*Mills & Barber,* for respondents.

*By the Court,* COLE, J.   This was a bill in chancery, filed
under the old practice, to enforce the specific performance of
a bond for the conveyance of land.   It appears that the case
went to hearing upon the pleadings and bond, which is made
an exhibit in the cause, and the circuit court decreed that
the title to the forty acres in controversy be passed to, and
become vested in, the respondents, under the provisions of
our statute.   But upon the facts disclosed in the case, we are
unable to concur in this judgment.

It is well settled that a bill for the specific performance of
a contract is an application addressed to the sound discretion
of the court, which withholds or grants relief according to
the circumstances of each case, and that a contract, to be en-
forced, must be fair, just and certain, and founded on an ad-
equate consideration, and if deficient in either of these essen-
tial requisites, a performance will not be enforced.   This is
the common and uniform language of all the authorities up-
on this subject.   2 Story's Eq. Jur., §§ 751, 793 a, 793 b;
Willard's Eq. Jur., pp. 266, 267; *Seymour vs. Delaney et al.,*
6 John. Ch. R., 222; *Minturn vs. Seymour,* 4 id., 497.   We
cannot see that the bond to convey in the present case was
founded upon an adequate consideration.   It appears that
the respondents, in the spring of 1837, were engaged in mi-
ning upon a quarter section of land in La Fayette county,
and had purchased, before that time, of one Jamison, for
the sum of $2,500, a lot upon said quarter section, known as
the "Jamison lot," and were mining and taking out from
said tract of land large quantities of mineral or lead ore,
when the appellant *Wood,* and one Carlin, entered forty acres
of the said quarter section, at the United States land office,
and obtained a receiver's receipt of entry.   The respondents,
upon being informed of the entry by *Wood* and Carlin, pro-
cured affidavits establishing the fact of their occupancy and
mining upon the land, and went to *Wood* and Carlin and

made claim to the land entered by them, representing that their diggings and the "Jamison lot" were included within such entry, when *Wood* and Carlin executed a bond, in the penal sum of five hundred dollars, to convey to the respondents the forty acres, providing it should appear that the "Jamison lot" was upon said tract, and they should obtain a patent for the land from the United States. The respondents continued personally to work upon the land, and to lease it for mining purposes, until 1854, when they learned that a patent had issued to *Wood* and Carlin. In the meantime Carlin had died, leaving a widow, and adult and minor children, and *Wood* refused to convey his interest in the land. It appears that *Wood*, in fact, had sold and conveyed his interest in the land to one Burrell; but if he had not, under the case made out by the bill, a court of equity would not compel him to execute the bond voluntarily entered into.

The United States lead mines on the upper Mississippi were early reserved from sale, and, in pursuance of an act of congress, were leased for limited terms, by agents acting under the direction of the President. There was great opposition to the system among the miners, and many never applied for or received any leases from the general government, but went on to the public lands, made claims, worked upon them and sold the mineral discovered and taken from their diggings. These claims were generally respected by the miners, even in cases where there was no lease, and were a subject of bargain and sale among them. We infer that the respondents purchased one of these claims, paying therefor a large sum of money. But it seems this claim, or mineral lot, was embraced within a forty acre tract, which had not been reserved as mineral land, and therefore was subject to entry. Every one at all acquainted with the early history of the lead district of the territory of Wisconsin, well knows that many lands containing rich veins of mineral, were entered. These entries were valid, unless the general government saw fit to vacate them, and the purchaser acquired an absolute title. So there can be no doubt that *Wood* and Carlin obtained a good title to the tract entered by them. What obligation were they under to recognize any claim upon the

land thus entered? What legal or equitable right had the <span style="float:right">June Term, 1860.</span>
respondents to call upon them for a conveyance of this land?
We cannot perceive that they had any whatever. And al-
though *Wood* and Carlin gave a bond for a conveyance, yet
as this was without consideration, why should a court of
equity now enforce a specific performance of it? It is a
voluntary agreement, and, although under seal, ought not to
be enforced.

The counsel for the respondents virtually conceded that
the bill in this case did not set forth such a state of facts as
showed that the bond ought to be specifically enforced, but
he insisted that inasmuch as the trial was had, and the ap-
peal taken, under the Code, we ought to presume that the
proofs supplied the facts which the bill omitted to state.
There is no proof in the case except the bond, and we do
not feel authorized to presume that evidence was given on
the trial which made out a case quite contrary to, or entirely
inconsistent with, the allegations of the bill. The bill does
not show that the bond was executed upon an adequate con-
sideration, but the contrary.

It follows that the judgment of the circuit court must be
reversed, and the cause remanded for further proceedings in
accordance with this opinion.