### HAY vs. LEWIS and others.

PRACTICE. *(1–3) Correcting record on appeal. Printed case.*
SPECIFIC PERFORMANCE: SALE OF LAND. *(4, 5) When agreement to sell will not be specifically enforced.*

1. This court has no power to amend the record as returned by the trial court; though it can, on proper suggestion, order a further return, or remit the record for correction, and enforce its orders.
2. The sole office of a printed case is to present correctly the material parts of the record in a form convenient for the use of the court.
3. A motion to strike from a printed case matter actually found in the record returned to this court, on the ground that such matter is not a proper part of the record, cannot be granted, and would be of no avail if granted.
4. Specific performance of a contract of sale of land will not be enforced, unless the court is satisfied that the claim for a deed is fair and reasonable, and the contract equal in all its parts and founded on an adequate consideration.
5. Before the land-owner's agent had accepted H.'s offer of $450 for the land here in question, one T. had offered such agent $550 for it; but H. objecting to the acceptance of T.'s offer, and insisting upon his own, T. withdrew his offer, and the agent accepted that of H., and gave a receipt for $50 then paid, as a payment on the purchase price of the land. Afterwards T. purchased of the owner directly for $600. *Held,* that the court will not require the title to be conveyed to H. or his assignee.

APPEAL from the Circuit Court for *Iowa* County.

Action for the specific performance of a contract for the sale of a house and lot. The case made in the complaint is substantially as follows: *Mrs. Lewis* was the owner in fee of a house and lot in Mineral Point, which she desired to sell;

Hay vs. Lewis and others.

and for many years *Mr. Henry* had been her special agent in respect to the property, and was authorized by her to find a purchaser for it, and to submit to her, by letter or otherwise, such offers as he might receive. In July, 1873, he submitted to her an offer made by one Jones of $450, which, in August, she authorized him to accept; but Jones then declined to take the house. In May, 1874, *Henry* authorized Jones to obtain a purchaser for the property for $450, whereupon Jones offered it to one Hilton for that sum, and the offer was accepted. On May 12, 1874, Jones informed *Henry* that he had sold the house for $450, but did not name the purchaser. *Henry* communicated this offer to *Mrs. Lewis* by letter, and on June 2d she authorized the manager of the telegraph office in Chicago (F. C. Swain) to inform *Henry* by telegram that she accepted the offer, and he sent to *Henry* this despatch: "*Mrs. Lewis* accepts offer for house. Address her, 111 Rhodes Avenue, Chicago. F. C. SWAIN." The contents of this telegram were made known to Hilton, who made arrangements that the plaintiff should pay the purchase money and take the title to himself, and afterwards sell to him. Before *Henry* communicated the contents of the telegram to Hilton, he received an offer from the defendant *Treweek* of $550 for the property, which offer was withdrawn during a conversation between *Henry*, Hilton and *Treweek* in respect to the matter. Afterwards, and on the same day, the contract was consummated between the plaintiff and *Henry*, when fifty dollars were paid, and the following receipt was given by *Henry:* "Received of *Robert Hay* $50 per John Hilton, on account of the Eaton house and lot sold to him for $450, and I am to send and get a deed, when he is to pay for the same. WILLIAM T. HENRY, Agent for *Mrs. Lewis.* June 6, 1874." *Treweek* had notice of this contract on the same day, and on the 8th of June, with the intent to deceive and defraud, he went secretly to Chicago, and there offered *Mrs. Lewis* for the property $600, which she accepted, though well knowing that she had

previously accepted another offer; and on the 24th of June she executed to him a deed of the property. Prayer, that this deed be adjudged fraudulent and void, and *Treweek* required to quitclaim the property to plaintiff; that *Mrs. Lewis* and her husband be required to convey the property to plaintiff by warranty deed, etc.

The defendants answered separately, denying most of the material allegations of the complaint.

It appeared that the following letter was written and mailed to *Mrs. Lewis* on the day of its date: "Mineral Point, Wis., June 6, 1874. *Mrs. H. A. Lewis*, No. 111 Rhodes Ave., Chicago. Dear Madam: Party to-day paid me $50 on account of the sale of the house, and I think will pay all the rest of the money on receipt of deed. I inclose deed, which please execute according to pencil directions on it, and return to me, when I will complete the matter. I dislike to sell it so low; have tried hard, but cannot get any more for it. If you cannot get Mr. Lewis to execute the deed, execute it yourself, and I will try if possible to get the party to take it that way. WM. T. HENRY."

The court found most of the allegations of the complaint to be true, and held, among other things, that the telegraphic despatch of June 2, 1874, was an acceptance by *Mrs. Lewis* of the offer made to her agent, and was sufficient to authorize him to enter into the contract with plaintiff, and such contract was binding; that plaintiff had paid the purchase money, and was entitled to a conveyance of the premises; that the conveyance to *Treweek* was taken with full knowledge on his part of all the plaintiff's rights; and that he must convey to the plaintiff. Judgment accordingly; from which the defendants appealed.

After the cause reached this court, but before a hearing, the respondent moved the court, on affidavit, that the printed case therein be amended in certain particulars. This motion was denied, and the following opinion filed, February 2, 1876:

PER CURIAM. This court has no power to amend the record as it is returned here from the court below. It can, on proper suggestion, order a further return, or remit the record for correction, and enforce its orders. But the court below alone possesses power to add to or take from the record. For this reason, apparently, the present motion is not to correct the record, but to strike out from the printed case what it is claimed is improperly made a part of the record. The sole office of the printed case is to present correctly the material parts of the record, in a form convenient for the use of the court. And the court cannot strike from the printed case where it properly and correctly follows the record. Were this to be done, the record itself would remain as it is, and would govern the judgment of the court. The respondent's motion, therefore, cannot be granted, and would not avail him, if granted.

Motion denied, with clerk's costs.

The cause was then argued upon the merits.

*M. M. Cothren*, for appellants:

1. The finding of the court was not supported by the evidence. 2. To render a contract binding upon a principal when made by an agent, it should be in the name of the principal; if the agent contracts in his own name, describing himself as agent or attorney for his principal, the contract is the contract of the attorney, and not of the principal. *Spencer v. Field*, 10 Wend., 88; *Stone v. Wood*, 7 Cow., 454; *Fowler v. Shearer*, 7 Mass., 19. 3. The suppression of the offer of *Treweek* was a fraud upon *Mrs. Lewis*, which would have released her from her obligation even if she had accepted the offer in time. If she had known all the facts, she never would have considered the plaintiff's proposition. A bill for the specific performance of a contract is addressed to the sound discretion of the court. The contract must be fair, just and

certain, and founded on ample consideration. *Smith v. Wood,* 12 Wis., 382; *Seymour v. Delancey,* 6 Johns. Ch., 222.

*Moses M. Strong,* for respondent:

1. The telegram was an acceptance of the proposition. *Trevor v. Wood,* 36 N. Y., 307; *S. C.,* 3 Abb., N. S., 355; Scott & Jarn. Law of Telegraphs, ch. 6, §§ 295, 296, 332, 333; Redfield on Carriers, §§ 541–551; Parsons on N. & B., 486; *N. Y. & Wash. Telegraph Co. v. Dryburg,* 35 Pa. St., 298; *Dunning v. Roberts,* 35 Barb., 463. 2. If the communication had been verbal or by letter, it would have been an acceptance. It was no less so because sent by wires. *Adams v. Lindsell,* 1 Barn. & Ald., 681; *Tayloe v. Merchants' Fire Ins. Co.,* 9 How. (U. S.), 390; *Vassar v. Camp,* 1 Kern., 441; *Mactier's Adm'rs v. Firth,* 6 Wend., 103. 3. The telegram was sufficient authority to *Henry* to contract with plaintiff for the sale of the premises. The authority would have been sufficient if it had been verbal. Story on Agency, § 50, note 3; Paley on Agency, 159; 2 Kent's Com., 614, § 41; 1 Parsons on Con., ch. 3, sec. 2, note (*s*); *Coles v. Trecothick,* 9 Ves. Jr., 234; *Riley v. Miner,* 29 Mo., 439; *Rottman v. Wasson,* 5 Kans., 552; *Groff v. Ramsey,* 19 Minn., 44; *Long v. Hartwell,* 34 N. J., 116; *Shaw v. Nudd,* 8 Pick., 9; *Ewing v. Tees,* 1 Bin., 450; *Lawrence v. Taylor,* 5 Hill, 107; *McWhorter v. McMahan,* 10 Paige, 386; *Dodge v. Hopkins,* 14 Wis., 630. Counsel further argued that the findings were sustained by the evidence.

RYAN, C. J. In our view of this case it is unnecessary to determine whether any agreement was in fact made between the appellant *Mrs. Lewis* and the respondent, for the sale of her premises, or whether such agreement, if made, is valid under the statute of frauds.

For, in our view, a valid agreement may be assumed. "The question then recurs, Is it the dictate of sound legal discretion, that this agreement should be specifically carried into

execution by the authority of this court? It is an application to sound discretion. This has been the uniform language of the courts of equity. It is not a case requiring the aid of the court *ex debito justitiæ*. It is a settled principle that a specific performance of a contract of sale is not a matter of course, but rests entirely in the discretion of the court, upon a view of all the circumstances. 'The jurisdiction' as Lord ELDON observed, 12 Vesey, 331, 'is not compulsory upon the court, but the subject of discretion. The question is, not what the court must do, but what it may do, under the circumstances.' A court of equity must be satisfied that the claim for a deed is fair and just and reasonable, and the contract equal in all its parts, and founded on an adequate consideration, before it will interpose with this extraordinary assistance. If there be any well founded objection on any of these grounds, the practice of the court is to leave the party to his remedy at law for a compensation in damages." *Seymour v. Delancey*, 6 Johns. Ch., 222. This is the well established rule, expressly affirmed by this court. *Smith v. Wood*, 12 Wis., 382.

It is very certain that before *Mrs. Lewis'* agent had made any contract under which the respondent can claim, for the sale of her property for $450, the appellant *Mr. Treweek* had offered the agent $550 for it. Upon Hilton, under whom the respondent claims, objecting to the acceptance of *Treweek's* offer and insisting upon his own less offer, *Treweek*, to avoid controversy, withdrew his offer; and then the agent accepted Hilton's offer and gave the receipt in the name of the respondent. Subsequently *Treweek* purchased from *Mrs. Lewis* directly for $600.

If *Mrs. Lewis* had authorized her agent to accept Hilton's offer, it was on the ground that it was for the highest price to be got. And the offer of a higher price ought to have been held, in good faith, to revoke the authority to accept the lower, yet unaccepted by the agent. And even when the higher offer was withdrawn, in the manner it was, we cannot but think

that *Mrs. Lewis* ought to have been advised of the circumstances before the agent accepted the less offer. The case shows that the sale of her property, if sale it was, was for a less sum than it was reasonably apparent a little patience would have secured.

But however that may be, the respondent can claim only under Hilton. And it was by Hilton's means, acting in his own name but on behalf of the respondent, that *Treweek* was induced to withdraw his higher offer. Under such circumstances, we cannot hold the respondent's contract, if contract there was, to be, in the language of *Smith v. Wood*, just, fair and upon adequate consideration. The rule will not permit us to disturb *Mrs. Lewis'* sale for the higher price to *Treweek*, or to enforce specific performance of Hilton's alleged contract in the name of the respondent for the lower price, when Hilton is responsible for the withdrawal of the offer of a higher price. The respondent must be left to enforce any right which he may have, by action at law.

*By the Court.* — The judgment of the court below is reversed, and the cause remanded with directions to dismiss the complaint.