Williams vs. Williams.

WILLIAMS vs. WILLIAMS.

*September 27 — October 12, 1880.*

SPECIFIC PERFORMANCE: *When it will be denied: Case stated.*

| 50 | 311 |
|---|---|
| 76 | 667 |
| 50 | 311 |
| 91 | 477 |
| 50 | 311 |
| 98 | 86 |
| 50 | 311 |
| 103 | 144 |
| 50 | 311 |
| 114 | 353 |
| 50 | 311 |
| 117 | 57 |

1. An action for the specific performance of a contract is an application to the sound discretion of the court; and such performance will not be decreed when for any reason it would be inequitable.
2. Action, commenced in 1875, to enforce a contract for the sale and purchase of land, made in October, 1863, in which the time for performing limited by its terms was three years. Besides the lapse of time, various circumstances (for which see the opinion) create a strong presumption that the contract was abandoned; and there is no sufficient rebutting evidence. *Held*, that equity will not enforce specific performance of a claim so suspicious and stale, but will leave plaintiff to his remedy at law.

LYON, J., dissented from the judgment.

APPEAL from the Circuit Court for *Kenosha* County.

The facts of this case, as found by the circuit court, were substantially as follows: Prior to. October 1, 1862, one Patrick Lane, being then the owner and in possession of the land in dispute (a tract of about sixty acres), bargained and sold it by oral agreement to one Richard Lewis, for $1,150, of which

sum Lewis then paid $600. On the day above named, Lewis borrowed from William Griffiths $500, which he agreed to repay at a specified time with interest at seven per cent. per annum; and to secure such payment he procured said Lane to execute to Griffiths a warranty deed of such land. Griffiths accepted the deed as security for the repayment of said loan and interest, and at the request of Lewis executed to Lane a mortgage of the land to secure the balance of the purchase price, viz.: $550, and interest at seven per cent. At the time of his contract to purchase the land, Lewis went into possession thereof; and he remained in possession until November 12, 1864. Between October 1, 1862, and October 1, 1863, Lewis paid Griffiths the interest on said loan of $500, and also paid to Lane, or his assignee of the $550 mortgage, such an amount that there remained then due thereon, for principal and interest, $491.81. On said 1st of October, 1863, upon solicitation of said Lewis, and upon his special promise to repay the same, Griffiths loaned to Lewis a sufficient sum to pay the whole amount due on said mortgage; and said mortgage was then paid and discharged. Lewis then promised to pay Griffiths the whole amount due him, as follows: $150 and interest on the whole sum, in one year from the date last mentioned; a like sum and interest in two years; and the balance, $691.81, in three years from that date. Said loan was made by Griffiths upon the security of the land, of which he held a warranty deed as already stated. Lewis and Griffiths then made an agreement in writing, whereby the former promised to repay said loan in the manner above stated, and Griffiths thereupon promised to convey said land to Lewis. On the 1st of October, 1864, Lewis paid Griffiths upon said loan $130. On the 12th of November, 1864, being then in possession of said premises, Lewis conveyed his interest therein and in said written agreement to the present plaintiff, *William Williams*, for $568.77, which sum plaintiff then paid him. Thereupon plaintiff took possession of and cultivated said premises, and

Williams vs. Williams.

paid the interest on said loan to Griffiths as it became due, until about September 29, 1868; and it was mutually agreed between plaintiff and Griffiths that the payment of the principal of said loan might be indefinitely postponed, so long as plaintiff continued to pay the interest thereon. On the day last above mentioned, one Lewis Williams, Sr., having full knowledge of all the. facts and circumstances, and of all the contracts, both oral and written, touching the title of said land, and intending to benefit and protect the plaintiff, paid Griffiths the whole amount then due him of said loan, to wit, $944, and received from him an assignment and conveyance of all his interest in said lands; and from said 29th of September, 1868, to August 29, 1873, when he died, said Lewis Williams, Sr., by himself and his tenants under him, occupied and used said premises, and received the rents and profits thereof. On the 25th of March, 1873, said Lewis Williams, Sr., executed a deed of said premises to one Mitton; and on the same day Mitton, without any good or valuable consideration, executed a deed thereof to *Jane Williams*, the defendant. Both Mitton and the defendant had full notice and knowledge of all the facts and circumstances touching the title of said lands, and the plaintiff's equity therein; and defendant had full knowledge that the deed to Mitton was without consideration. Since said 25th of March, 1873, defendant has occupied said premises, and received all the rents and profits thereof up to this date; and the fair rental value of the premises from September 29, 1868, to September 29, 1876, has been $150 per year. From 1868 to 1876, inclusive, Lewis Williams and the defendant have paid for taxes on said lands, various specified sums amounting to $122.14; and in 1874, defendant made repairs upon the premises to the value of $318.97. On the 25th of February, 1875, defendant executed a valid mortgage on the premises for $300, with interest at ten per cent. per annum, to secure a loan for that amount; and said mortgage is an incumbrance on the land for the whole amount

of the principal and of the interest accrued since that date. Upon an accounting (wherein is allowed to defendant the $944 paid by Lewis Williams, Sr., to Griffiths, with seven per cent. interest thereon annually since September 25, 1874, and also the taxes paid as above stated, and wherein is allowed to plaintiff $150 annually for the use and occupation of the premises and the above described mortgage debt of $300 and interest, charged on the premises by defendant), a balance is found, in defendant's favor, September 29, 1876, of $113.14.

The judgment prayed for in the complaint was, that defendant account for the rents, issues and profits of said lands, from September 29, 1868, until the entering of the decree herein; that an account be taken of the amount due on said contract between Lewis and Griffiths; and that, upon payment of the residue of said purchase money (if any should be found due), the defendant specifically perform the agreement of Griffiths with said Lewis. There was a further prayer for costs, and for general relief.

Upon the facts found by the court as above stated, it held, 1. That Griffiths was seized in mortgage of the land in question; that after the conveyance from Griffiths to Lewis Williams, Sr., the latter was seized of the premises in like manner; that after the conveyance by him to the defendant, she became so seized; and that no one of the three persons named had any other title or interest in the premises than as mortgagee. 2. That plaintiff is the owner of the equity of redemption of the premises, and is entitled to redeem them from defendant's said mortgage. 3. That on September 29, 1876, plaintiff was indebted to defendant in the sum of $113.14. 4. That a reference should be made for a further accounting between the parties since September 29, 1876. 5. That plaintiff was entitled to judgment against defendant for the possession of the premises, and for such sum as should be found due him upon such further accounting.

After the report of the referee for a further accounting was

filed, judgment was rendered for the plaintiff in accordance with the conclusions of law above stated. The defendant excepted to some of the findings of fact and to the 1st, 2d and 5th conclusions of law, and appealed from the judgment.

For the appellant there was a brief by *J. V. & C. Quarles*, and oral argument by *J. V. Quarles*.

For the respondent there was a brief by *John T. Fish*, and oral argument by *Mr. Fish* and *D. S. Wegg*.

RYAN, C. J. Whatever might have been the effect of the parol transaction between Richard Lewis and William Griffiths (*Bowen v. Warner*, 1 Pin., 600), it was plainly merged in the contract which the former accepted from the latter. *Yenner v. Hammond*, 36 Wis., 277. The respondent claims as assignee of this contract; and, though the contract was not recorded, Lewis Williams, who purchased the premises from Griffiths, and the appellant, who purchased from Lewis Williams, both had notice of the contract. Lewis Williams, after he had acquired title, was in possession of the premises for some time before his death, receiving the rents. The complaint prays, among other things, an account of the rents received by Lewis Williams, and that the respondent be permitted to pay the balance due on the foot of the contract, and that thereupon the appellant be adjudged to perform the contract and convey the premises to the respondent.

This has been called a bill to redeem. In one sense it may partake of the nature of such a bill. Bills by the vendee for specific performance of contracts for the sale and purchase of land may often be regarded, in one aspect, as *quasi* bills to redeem. Such contracts have always been regarded in equity as analogous to equitable mortgages; the vendor standing as mortgagee in fee, and the vendee as owner of the equity of redemption. *Button v. Schroyer*, 5 Wis., 598; *Northrup v. Trask*, 39 Wis., 515. And so a bill for specific performance of such a contract may partake of the nature of a bill to

redeem.   But it is none the less, in form and scope, strictly a bill for specific performance.   As such it is always classed and considered.   There is no redemption on such a contract, except by specific performance.   Specific performance enforces a contract by giving a party something to which he had not title before.   Redemption gives a party nothing new, but enforces his right to repurchase his own, incumbered for a debt. Redemption restores the parties to their former rights of property.   Specific performance gives them new rights of property.   This is not a distinction without a meaning.   In case of incumbrance the debt is the principal thing, and the creditor is bound to receive his debt and release the property.   No circumstances can control this right of the debtor.   Redemption is therefore *strictissimi juris.*   Upon a contract for sale and purchase the land is the principal thing, and the vendor may be excused from receiving the price and conveying the property.   Circumstances control the right of specific performance.   It is therefore discretionary.

Specific performance will not be decreed when, for any reason, it would be inequitable.   " It is an application to sound discretion.   This has been the uniform language of the courts of equity.   It is not a case requiring the aid of the court *ex debito justitiæ.*   It is a settled principle that a specific performance of a contract of sale is not a matter of course, but rests entirely in the discretion of the court, upon a view of all the circumstances.   'The jurisdiction,' as Lord ELDON observed (12 Vesey, 331), 'is not compulsory upon the court, but the subject of discretion.   The question is not what the court must do, but what it may do under the circumstances.'   A court of equity must be satisfied that the claim for a deed is fair and just and reasonable, and the contract equal in all its parts, and founded on an adequate consideration, before it will interpose with this extraordinary assistance.   If there be any well-founded objection on any of these grounds, the practice of the court is to leave the party to his remedy at law for a

compensation in damages. *Seymour v. Delancey*, 6 Johns. Ch., 222. This is the well established rule, expressly affirmed by this court. *Smith v. Wood*, 12 Wis., 382." *Hay v. Lewis*, 39 Wis., 364. See, also, *Mowry v. Wood*, 12 Wis., 413; *Dean v. Earley*, 15 Wis., 100; *Northrup v. Trask, supra*.

The contract for the sale and purchase of the premises in question was made in October, 1863, and three years were the limit of performance. This action was commenced in April, 1875. This mere lapse of time might, under many circumstances, be a formidable objection to specific performance. It is said in the first case in this court, *Button v. Schroyer*, that the court " will enforce performance within a reasonable time." And here the circumstances surrounding the contract give significance to the delay of the respondent, and tend to indicate his abandonment of it. It appears that, upon the assignment of the contract to the respondent in November, 1864, he went into possession of the premises under William Griffiths, and remained in possession until October, 1868; that then, upon the conveyance of the premises by Griffiths to Lewis Williams, he surrendered the premises to Lewis Williams, who remained in possession till his death, in August, 1873. The weight of the evidence tends to show that, from the time Lewis Williams took possession until after his death, the respondent set up no claim to the premises under the contract from William Griffiths, and that Lewis Williams held them in his own right, free from any claim of the respondent. Certain it is that, in July, 1872, Lewis Williams executed his will, proved after his death, devising the premises to the appellant for life, with remainder to the respondent in fee; and afterwards, in March, 1873, conveyed the premises, in fee, through a third person to the appellant. Certain it is, also, that after the death of Lewis Williams, the respondent, claiming under the devise from him, commenced an action against the appellant and Edward Mitton, her immediate grantor, to set aside the conveyance to her on the ground of duress. In

his complaint, which he verified, he avers that Lewis Williams was seized in fee simple of the premises, which were his homestead, in his life-time, and devised them as already mentioned.

Almost the only evidence tending to rebut the strong presumption of abandonment of the contract, arising from this consistent series of facts, all tending one way, is that of the respondent himself. He was the son of Lewis Williams, and he testifies to transactions between his father and himself quite inconsistent with his father's conduct during his lifetime, and his own apparent acquiescence in it then and since, until the commencement of this suit. How far this evidence was competent (R. S., sec. 4069), need not be considered. It is enough to say that it cannot be received as a satisfactory statement of the equities between the respondent and his father to support a decree of specific performance. Courts of equity do not interpose this extraordinary power to enforce such suspicious and stale claims. They do not decree specific performance in cases of such doubt. Specific performance might well be a great wrong in such circumstances, and the plaintiff will be left to his remedy at law.

*By the Court.*— The judgment is reversed, and the cause remanded to the court below with directions to dismiss the complaint.

LYON, J., dissented.