Hibbert vs. Mackinnon.

========

HIBBERT, Respondent, vs. MACKINNON, imp., Appellant.

*March 23 — June 3, 1891.*

*Contracts: Specific performance: Evidence: Consideration.*

79  673|
88  497|

1. In an action to compel specific performance of an oral contract, alleged to have been made by one V., who died before the action was commenced, for the transfer of certain shares of mining stock, the evidence (consisting mainly of testimony as to the alleged verbal admissions made by V. in casual conversations several years before the trial) is *held* not to prove the existence of the contract clearly and satisfactorily enough to justify the court in granting the relief.

2. Either of the lessees having the right to assign his interest in a mining lease without the consent of the others, the consent of one of the others to such an assignment is not a sufficient consideration to warrant the enforcement of specific performance of a promise to transfer to him certain shares of stock.

APPEAL from the Circuit Court for *Milwaukee* County.

This is an action in equity to enforce specific performance of an alleged parol contract for the sale and transfer of certain mining stock.

In 1883 one Wakefield and six others, being owners of certain land in Ontonagon county, Mich., supposed to contain iron ore, executed to Samuel S. Vaughn and Nathaniel D. Moore a lease thereof known as a mining lease, for the term of thirty years, on certain conditions therein expressed. One of those conditions was that the lease should

not be assigned without the consent of the lessors. One Bowen had a one-fifth interest in the lease, and afterwards another interest therein was assigned to one Hoffman. The interests of Bowen and Hoffman together was one third of the whole, leaving a one third interest, in each of the original lessees, Vaughn and Moore. It is understood that Vaughn controlled Bowen's interest. In the summer of 1885, Vaughn opened negotiations with Henry D. and J. W. Smith to sell such lease to them, and obtained the consent of the lessors to such sale. These negotiations ended without any sale being made. Afterwards both Vaughn and Moore had negotiations with Wakefield for a sale of the lease, but no sale was made to him. Thereupon, in August, 1885, Vaughn renewed negotiations with the Smiths, which resulted in the sale to them of his interest, and that of Bowen in the lease. Moore joined in the assignment of the lease to the Smiths, under an agreement with them that he should retain his one third interest, which seems to have been afterwards reconveyed to him by the Smiths pursuant to the agreement. The Smiths and their associates then organized a corporation under the laws of Michigan, known as the Sunday Lake Mining Company, to which the lease was duly assigned, and one third the capital stock of such corporation was issued to Moore as and for his interest in the lease.

It is claimed in this action that Vaughn desired to dispose of the lease of the Sunday Lake property, while Moore wished to keep and develop the property, believing it to be rich in minerals; that Vaughn offered Moore 1,000 shares of the stock of a corporation known as the Aurora Iron Mining Company, if he would consent to a sale and transfer of the lease; and that Moore accepted such offer, and in consideration thereof consented to the sale and joined in the assignment of the lease to the Smiths. Vaughn died in January, 1886, testate, bequeathing his stock in the Au-

rora Company, being 1,016 shares, to his widow, who is also the executrix of his will.   She afterwards intermarried with one Mackinnon, and is the defendant *Emeline Vaughn-Mackinnon*.   Due demand upon her was made by Moore for the Aurora stock, but she refused to assign and deliver the same to him.   Moore assigned his interest in and right to such stock to the plaintiff, who thereupon, in 1888, commenced this action against *Mrs. Mackinnon* and the Aurora Company to compel her to deliver the stock pursuant to the alleged contract of her husband, and to compel the company to pay over to him certain accrued dividends thereon held by the company.   The defendant company made no defense to the action.   *Mrs. Mackinnon* answered, among other things, denying that her former husband ever promised to deliver or assign such stock to Moore.

The circuit court found that Vaughn promised and agreed to assign the 1,000 shares of Aurora stock to Moore, and gave judgment for plaintiff for the specific performance of such agreement, requiring *Mrs. Mackinnon* to assign the 1,000 shares of Aurora stock to plaintiff, and requiring the defendant company to pay over to the plaintiff the dividends thereon retained by it.   The defendant *Mrs. Mackinnon* appeals from such judgment.

For the appellant there was a brief by *Silverthorn, Hurley, Ryan & Jones*, attorneys, and *E. E. Chapin*, of counsel, and oral argument by *W. C. Silverthorn* and *Mr. Chapin*. They argued, *inter alia*, that no consideration was paid by Moore, and therefore the alleged agreement will not be specifically enforced.   Waterman, Spec. Perf. 186; *Hanson v. Michelson*, 19 Wis. 498; *Eaton v. Eaton*, 15 id. 259; *Petesch v. Hambach*, 48 id. 443; *Webb v. Alton M. & F. Ins. Co.* 10 Ill. 225; *Preston v. Williams*, 81 id. 177; *South v. Wood*, 12 Wis. 382.   Specific performance cannot be decreed of a sale of property not specific.   1 Benj. Sales, sec. 469; *Gillett v. Hill*, 2 Cromp. & M. 530; *First Nat. Bank*

*v. Crowley,* 24 Mich. 492; *Hahn v. Fredericks,* 30 id. 224; *Crapo v. Seybold,* 35 id. 169; *May v. Hoaglan,* 9 Bush, 171; *Randolph I. Co. v. Elliott,* 34 N. J. Law, 184; *Johnson v. Pierce,* 16 Ohio St. 473; *Ormsby v. Machir,* 20 id. 295; *Home Ins. Co. v. Heck,* 65 Ill. 111, 112.

For the respondent there was a brief by *Turner & Tim-lin,* and oral argument by *W. J. Turner.* They cited, as to jurisdiction to decree specific performance of a contract for transfer of stock, *Todd v. Taft,* 7 Allen, 371; *Holmes v. Winchester,* 133 Mass. 140; *Leach v. Forbes,* 11 Gray, 510; *Cushman v. Thayer Mfg. J. Co.* 76 N. Y. 365, 368; *White v. Schuyler,* 1 Abb. Pr. (N. S.), 300; *Johnson v. Brooks,* 93 N. Y. 337, 343; *Treasurer v. Com. M. Co.* 23 Cal. 390; *Cowles v. Whitman,* 10 Conn. 121; *Frue v. Houghton,* 6 Col. 318; *Bissell v. Farmers' & M. Bank,* 5 McLean, 495; *Ross v. N. P. R. Co.* 1 Woolw. (C. C.), 26, 33; *Duncuft v. Albrecht,* 12 Simons, 189; *Shaw v. Fisher,* 5 De G., M. & G. 596; *Wynne v. Price,* 3 De G. & Sm. 310; *Wilson v. Keating,* 7 Weekly Rep. 484; *Cheale v. Kenward,* 3 De G. & J. 27; Cook, Stockholders, sec. 338, and cases cited; 2 Story, Eq. Jur. (13th ed.), secs. 717, 718.

Lyon, J. We are of the opinion that this action for specific performance of the alleged contract by Samuel S. Vaughn to deliver to Mr. Moore the 1,000 shares of Aurora stock in question cannot be maintained for two reasons. These are: (1) The alleged contract is not established by clear and satisfactory evidence; and, (2) were it so established, there is no adequate consideration therefor.

I. The circuit court found that in August, 1885, Mr. Vaughn agreed to transfer to Mr. Moore 1,000 shares of Aurora mining stock, in consideration that the latter would consent to a sale of the Sunday Lake mining lease, of which they were part owners in common. The court states in the findings the testimony upon which it is based, as fol-

Hibbert vs. Mackinnon.

lows: " That, immediately after said agreement was entered into between said Vaughn and Moore, the said Vaughn informed the witness W. J. Ryan of the agreement, and stated to him, 'I gave Capt. Moore a thousand shares of Aurora stock, and settled, and he signed the lease;' and the same evening stated the same fact to the witnesses H. S. Benjamin and Laura D. Benjamin; and about the same time informed the witness J. Wells Smith of the agreement between him and the said Moore, and stated to him that he had agreed to give the said Moore 1,000 shares of the said Aurora stock, and about two months afterwards again informed the witness Smith of the agreement, and promise to give the said Moore 1,000 shares of the Aurora stock; and also, shortly after said agreement, informed the witness Burton that he had agreed to give the said Moore 1,000 shares of the said Aurora stock. About two months before the death of the said Vaughn he stated to the witness Fisher that he had 1,000 shares of Aurora stock which belonged to said Moore."

Much of the testimony of the witnesses above named is greatly overstated. Neither H. S. nor Laura Benjamin testified that Vaughn stated to them the same fact which it is found he stated to Ryan, or anything which is necessarily the equivalent of such fact. Henry S. Benjamin merely testified that, in the summer of 1885, he met Vaughn on the street in Milwaukee, who said he was trying to get the Sunday Lake matter fixed up; that Moore was working at it; and that he had promised to give Moore 1,000 shares of Aurora stock, and would give him 2,000 rather than not have it fixed up. Mrs. Benjamin testified to a dinner conversation during the same summer, in which Moore said that he had 1,000 shares more than he had in the morning, and Vaughn said they had both made a good deal, and he was satisfied. It does not appear what particular stock was referred to, or that anything was said as to how or

from whom or on what terms Moore obtained it. Burton did not testify that Vaughn informed him that "he had agreed to give the said Moore 1,000 shares of the said Aurora stock," or anything like that. He simply testified that in November, 1885, in a casual conversation, Vaughn said that practically he owned no Aurora stock, although the books might show 1,016 shares in his name; that the same was disposed of, but did not state what disposition he had made of it. The testimony of Burton and of Mr. and Mrs. Benjamin is of little significance in this case. The testimony of the other witnesses named in the above finding is confined entirely to casual conversations with Vaughn, which occurred four years before they testified, and in the subject matter of which it does not appear the witnesses had any special interest or any interest at all. No reasons appear why they would be apt to remember the exact language or purport of a mere passing remark by Vaughn which they had no cause to remember. The unreliability of such testimony is proverbial, and, if uncorroborated, is not a sufficient basis to authorize a court of equity to divest a man of his property. Especially is this so when the person whose admissions are thus testified to is dead. Were Vaughn alive, it might well be that he could satisfactorily explain these admissions, if he ever made them, and demonstrate that the circuit court has not given them their correct significance. Moreover, facts are disclosed in the cross-examination of some of these witnesses which tend to impeach the accuracy of their statements. We do not question the integrity of these witnesses, and shall not further discuss their testimony.

There is but little other competent testimony in the case tending to prove that Vaughn agreed to give the Aurora stock to Moore. Against the objections of the defendants, Moore testified to conversations and transactions with Vaughn in his life-time, which, if admissible, would tend to

prove such agreement. But, under sec. 4069, R. S., the testimony was inadmissible, and must be disregarded. The most pointed testimony of the alleged agreement is found in a letter dated October 5, 1885, written by Moore to Vaughn, in which Moore says: "Would like to have you send me the 1,000 shares of Aurora and Vaughn stock. I can raise the money on it. Am sorry to have to take the stock from you, but, as there is no show to sell my interest, I am compelled to do so. On account of your giving me the stock," etc. To this letter Vaughn replied three days later, saying: "Yours received. My stock was sent to Milwaukee to be exchanged for new stock; expect it back any day. I think I will be in Milwaukee the first of next week," etc. Not a word here of recognition by Vaughn of Moore's suggestion that Vaughn had agreed to give him such stock, and no promise to give it to him when it should be returned from Milwaukee. This correspondence is of little value in ascertaining what agreement (if any) existed between Vaughn and Moore respecting the stock. Hence the testimony to support the finding that Vaughn agreed to give Moore the stock in question is substantially confined to the alleged verbal admissions of Vaughn, testified to by the witnesses Smith, Ryan, and Fisher, upon the probative force of which sufficient comment has already been made. To this is opposed the testimony of Mr. Chapin, that in September, 1885, in a conversation between Vaughn, Moore, and the witnesses, Vaughn spoke of the 1,016 shares of Aurora stock, and said he intended to keep it, and that Moore made no reply. We do not think specific performance of an alleged parol contract should be decreed, especially after the death of the party against whose representative such performance is sought to be enforced, when the testimony of the existence of the contract is so inherently weak and unsatisfactory, and when it is contradicted, directly to some extent and inferentially by many reasonable

probabilities of the case, even though one might think the evidence preponderates in favor of the existence of the contract. It is the duty of the court to deny such relief, unless the contract is clearly and satisfactorily proved. It was so held in *Knoll v. Harvey*, 19 Wis. 99, and the rule is quite elementary. In this case there is no such clear and satisfactory proof of the existence of the alleged parol contract as will justify the court in decreeing specific performance thereof. A person who allows a contract involving thousands of dollars to rest in parol, and takes no care to preserve proof of its existence or terms, and then seeks to enforce its execution in equity after the other contracting party is dead, and can furnish no proof of the contract except casual verbal admissions of such other party, the proof of which is unsatisfactory to the court, has no just reason to complain if the court denies him equitable relief, and turns him over to his action at law for damages. By his careless and un-business-like methods he has placed the controversy in a position that it ought to be determined by a jury in an action at law, and not by a court of equity.

II. It is axiomatic that specific performance of an executory contract will not be decreed unless the contract is founded upon an adequate consideration. *Smith v. Wood*, 12 Wis. 382, furnishes an illustration of the application of this rule. The consideration of the alleged contract by Vaughn to deliver to Moore the 1,000 shares of stock in question was the consent of Moore to the transfer of the lease of the Sunday Lake mining property, held by Vaughn, Moore, and others, to the Smiths. True, the court found it was part of such contract that Moore should pay assessments on a one-half interest in the lease theretofore sold by Vaughn and Moore to one Hoffman as a non-assessable interest, and that such assessments were made and Moore paid them as agreed. The proofs do not support such finding. The contract for the delivery of the 1,000 shares to

Moore was made (if at all) in August, 1885. It does not appear that anything was said at that time about the Hoffman interest. The first reference to it is in the above-mentioned letter of October 5, 1885, written by Moore to Vaughn, in which he says: " On account of your giving me the stock, I will see that all assessments on the 1,000 shares (Hoffman's stock) are paid, so that will cost you nothing. I am willing to bind myself to do so." We are at a loss to perceive how the learned circuit judge found that this alleged agreement by Moore to pay assessments on Hoffman's stock was a part of the original contract. So the only consideration disclosed by the proofs for Vaughn's alleged agreement to deliver to Moore the 1,000 shares of Aurora stock was the consent of Moore that the lease might be assigned to the Smiths. Was this an adequate consideration, within the requirement of the rule above quoted?

Vaughn and Moore and their associates were tenants in common of the Sunday Lake mining property. Either had the undoubted right to sell and transfer his interest therein to a stranger without the consent of his co-tenants. Hence it was competent for Vaughn to assign his interest and the interest of his co-tenant controlled by him to the Smiths, without the consent of Moore. In substance and legal effect he assigned those interests, and those only, to the Smiths. True, the form of the transfer was that the whole interest under the lease was so assigned, but, pursuant to a previous arrangement, such assignment did not carry the interest of Moore. One of the Smiths testified that they did not purchase Moore's interest, but it was thought necessary that the whole interest should be assigned to them in the first instance, and it was so assigned; whereupon they conveyed back to Moore his interest, and when the Sunday Lake Mining Company was organized a corresponding amount of its capital stock was issued to him. This testimony is undisputed. We are quite unable to perceive the necessity

for an assignment of the whole interest in the lease in the first instance, and a reassignment to Moore of his interest therein. It would seem that the same result would have been reached had Vaughn merely assigned to the Smiths his interest therein and that of his co-tenant which he controlled. Such being the legal effect of the assignment, Vaughn did nothing more than he had the right to do without the consent of Moore, and his alleged agreement to give Moore 1,000 shares of Aurora stock for such consent was a mere voluntary promise, without consideration, or at least without any such adequate consideration as will justify the interference of a court of equity to enforce specific performance of such promise.

*By the Court.*— The judgment of the circuit court is reversed, and the cause will be remanded with directions to dismiss the complaint.