LUDWIG, Respondent, vs. LUDWIG, imp., Appellant.

*May 3—November 4, 1919.*

*Specific performance: Promise of son to pay monthly sum to parents: Adequate consideration: Right to occupy premises: Statute of frauds: Parent and child: Gratuity: Husband and wife: Wife's contract: Validity: Agreement to execute mortgage: Homestead: Nonresident wife: Mortgages: Equitable lien.*

1. Equity will not enforce a promise by a son and daughter-in-law to give to his parents $100 a month during the rest of their lives unless there is something that at least approaches an adequate consideration for the promise.
2. Nor will such an agreement be enforced in equity where the parents made no promises as a consideration therefor, made no improvements upon premises which they were permitted to occupy, and made no material sacrifice in moving thereon.
3. The son's agreement to pay his parents $100 a month during the rest of their lives, where there was no consideration therefor, was a mere revocable gratuity, which was revoked by his failure to carry it out. Nor could the wife, by joining in such an agreement, bind herself to its terms.
4. A parol agreement to permit parents to occupy certain premises during the rest of their lives was void under sec. 2304, Stats., requiring a contract of leasing for a period longer than one year to be in writing, and under sec. 2305 will not be specifically enforced where there has been no performance or fraud.
5. A wife who is a resident of another state cannot defeat an incumbrance of property upon the ground that it is a homestead, since the benefits of the homestead exemption, under sec. 2203, are available only to residents of the state.
6. Where money has been borrowed upon the assurance, relied upon by the lender, that a mortgage to secure a loan would be executed upon certain land, an equitable lien for the balance due upon the loan will be impressed upon the land.

7. An agreement to execute a mortgage upon land owned by the husband and wife to secure a loan was binding upon the wife, notwithstanding coverture, where the proceeds of the loan went into property in which both husband and wife were conducting their separate lines of business.

APPEAL from a judgment of the circuit court for Milwaukee county: W. B. QUINLAN, Judge. *Reversed.*

For some time prior to August, 1908, the plaintiff, *Sarah Ludwig,* and her then husband, William Ludwig, were keeping a rooming house in Milwaukee near the United States government building, where William Ludwig for a long time had been and until his death continued to be employed. They had no definite lease and were keeping it for a friend of theirs, paying $15 or $20 per month rent and receiving from roomers $80 per month or more.

The defendant Roy J. Ludwig was a son of William and *Sarah* and had left their home many years before at the age of about fifteen, and in 1906 had married the defendant *Emma.* At the time of the marriage and of the transactions here in question both Roy and *Emma* were living in Chicago and in receipt of large incomes from separate enterprises conducted by each, of the nature of which the least said the better. In June of 1908 the defendants Roy and *Emma* purchased a house and lot in the residence portion of Milwaukee on Downer avenue, and in July purchased the next lot thereto, the deeds running to them as husband and wife. They spent considerable money in furnishing and fitting up the house and making additions thereto, so that finally there was an investment of over $16,000 in the property. Under an arrangement made in August, 1908, the testimony concerning which is set forth in the decision, the plaintiff and her husband moved into the premises on Downer avenue and lived there together until the death of William in 1917, and the plaintiff *Sarah* continued to live there after his death. Under a promise then made, pay-

ments of $100 per month to William and *Sarah* were kept up for a time.

In April, 1910, the defendant Roy obtained from the plaintiff *Sarah* $4,000 and used substantially all of it in the improvement of a certain saloon building described as the Casino, then owned by him and in a portion of which the defendant *Emma* conducted and carried on her enterprise. No part of this $4,000 was received directly by the defendant *Emma*. The defendant Roy repaid $1,125 of that loan by turning over to his mother a legacy received by him in February, 1916.

In November, 1910, the defendant *Emma* loaned to her husband, Roy, $4,500, part of which was used by him in connection with the repairing and furnishing of the Casino building and in the repairing of another building also owned by him in Chicago, and in January, 1912, she loaned to him an additional $2,000, also for such use. At the time of these respective loans trust deeds were executed by the defendant Roy to his wife upon his interest in the Downer avenue property.

The $100 a month payments were continued until February or March of 1914. In October of 1914 the defendants Roy and *Emma* separated, and in 1916 *Emma* started a foreclosure proceeding in the circuit court for Milwaukee county upon the trust deeds above specified without making *Sarah* or William Ludwig parties therein, and judgment by default was taken for the amount then due. The defendant Wisconsin Trust Company was trustee in said trust deeds, and the defendant P. J. Kelly was appointed receiver in such foreclosure action. Shortly thereafter the receiver commenced an action for unlawful detainer to regain possession of the Downer avenue property from William and *Sarah* Ludwig. In 1916 the plaintiff, *Sarah,* with her husband, William, commenced this action against the defendant *Emma E. Ludwig,* the Wisconsin Trust Company, and P. J.

Kelly as receiver, for the relief embodied in the findings and judgment hereinafter set forth, and defendant Roy J. Ludwig was brought into the action by the cross-complaint and application of *Emma E. Ludwig,* but he made no contest herein.

The court found that in the fall of 1908 there was a con- tract for a good and valuable consideration to the effect that the plaintiffs William and *Sarah* were to have the Downer avenue premises so long as either of them lived, and that as a further consideration for their changing their place of residence and giving up their rooming business and other good and valuable considerations then and in the future to be received, the sum of $100 per month during the lifetime of said plaintiffs or either of them.    That the defendants Roy and *Emma* were to pay the taxes and assessments and all repairs on said premises.    That the plaintiffs performed at great material sacrifice the things upon their part agreed to be performed, gave up their rooming-house business, took possession of the real estate, and made permanent and valu- able improvements on said property at their own expense, and remained in possession ever since.    That a loan of $4,000 was made in April, 1910, to the two defendants by *Sarah Ludwig* under an agreement that security in the form of a mortgage was to be given on the premises as a first lien and that such mortgage was also to be security for the pay- ment of any sums then due under the agreement to pay $100 per month or that might thereafter be owing on account of such agreed payments.    The court also found the balance due in these respective matters.

Judgment was thereupon entered, in substance providing, first, that the plaintiff, *Sarah Ludwig,* was entitled to the possession and use of said premises during the balance of her life; second, that the real estate was impressed and charged with an equitable mortgage lien in favor of plaintiff to secure the payment of the sum adjudged to be then due

her of $10,250 upon the promise, given in 1908, to pay the
$100 per month, and that further sums of $100 per month
will continue to fall due on the first day of each month after
August 1, 1918, during the life of the said *Sarah Ludwig;*
third, that the said real estate was further impressed and
charged with an equitable mortgage lien in favor of the
plaintiff for the sum of $4,528.52, being the balance of the
$4,000 loan together with interest; fourth, that the real
estate should be sold at public auction, subject, however, to
the right of the plaintiff to the use and occupancy thereof
during life, unless before such sale there should be paid the
two respective sums above mentioned with interest, costs,
etc., and that upon such sale, if one should be had, a deed
to the purchasers thereof should be subject to the right of
the plaintiff to such use and occupancy during her life, and
that she should be paid out of the proceeds of any such sale
the sums above mentioned, together with such further sums
that shall then have accrued on account of the $100 per
month; fifth, that if there should be any deficiency under
such sale, then judgment should be rendered against the de-
fendants *Emma E.* and Roy J. Ludwig, who were found to
be personally liable for the payment of the debts above men-
tioned; sixth, that in case of the redemption from the
effect of the judgment by the payment of the principal sums
and then in the event of a subsequent default in any of the
instalments of $100 per month, the plaintiff should be at lib-
erty to apply to the court, at the foot of the judgment, for
a further order and determination upon such default and
for a sale of so much of said premises as would be sufficient
to satisfy the amount then due; seventh, that the trust deeds
for the $6,500 were in fraud of the rights of the plaintiff
and in no wise prior or superior to the equitable liens of the
plaintiff as thus determined; eighth, that the unlawful de-
tainer action was wrongfully brought, and that the defend-
ant *Emma E. Ludwig* should be restrained from interfering

with the possession, use, and occupancy of the said real estate by the plaintiff during her lifetime.

From such judgment the defendant *Emma E. Ludwig* has appealed.

For the appellant there was a brief by *Henry S. Sloan* of Milwaukee and *E. H. Morris* of Chicago, attorneys, and *Charles E. Pierce* of Janesville, of counsel; and the cause was argued orally by *Mr. Pierce* and *Mr. Sloan.*

For the respondent there was a brief by *Glicksman, Gold & Corrigan* of Milwaukee, and oral argument by *Walter D. Corrigan* and *Walter L. Gold.*

The following opinions were filed May 27, 1919:

ESCHWEILER, J.   This judgment, so far as it relates to the amounts due or to become due under the promise to pay $100 a month, must be supported, if at all, as a basis for the relief granted in the court below upon the testimony as to conversations between the defendants and the plaintiffs in 1908, just prior to the moving by plaintiffs into the dwelling in question, and in 1910 at the time the $4,000 loan was made.   This testimony was in substance that at an interview between them in 1908 at the rooming house where plaintiffs were then living, the defendants Roy and *Emma* said: "If you will sell out here and give up the place and move to Downer avenue, we will give you $100 per month as long as either of you live; we will keep up repairs and keep up the taxes, and you can have the premises as long as either of you live, undisputed by any one."   The defendant Roy testified the same way as to the arrangement, with the additional phrases that "we [meaning Roy and *Emma*] will spend a month or six weeks a year with you there and see that you get that money at the end of every month.   We guarantee to send you $100 a month."   A son-in-law of the plaintiff testified substantially as above recited, and gave as his recollection of the conversation that the defendants

also told the plaintiffs that they, the plaintiffs, "were to go up and enjoy that new home."

From this testimony and from the other facts and circumstances in the record before us we are unable to find a sufficient foundation upon which can be based any of the relief granted by the court below upon this branch of the case.

In order to require or expect a court of equity to enforce specific performance of an executory contract such as was here involved by a promise to pay the $100 per month during the lifetime of the beneficiaries thereof, there should certainly be as the basis for such relief at least something that approaches an adequate consideration. *Hibbert v. Mackinnon,* 79 Wis. 673, 680, 49 N. W. 21; *Hay v. Lewis,* 39 Wis. 364, 369; *Hanson v. Michelson,* 19 Wis. 498, 508; *Smith v. Wood,* 12 Wis. 382; 36 Cyc. 545; Pomeroy, Eq. Jur. § 1293; Waterman, Spec. Perf. § 186; *Roseville T. Co. v. Curtiss* (N. J. Ch.) 92 Atl. 580.

The plaintiffs on their part promised nothing; there was no obligation on their part to take care of and look after the premises; no agreement to remain any specified length of time on the premises, or even to care for the same while so occupying the same; they were at liberty to leave at any time, and the defendants would have been without any remedy whatsoever as against them for so terminating the relationship. The plaintiffs did not then agree to do anything in the shape of repairs; indeed the defendants themselves assumed that obligation. Though it is recited in the findings of fact that the plaintiffs did make permanent and valuable improvements on the property at their own expense, we find no evidence in the record to support such a finding. Neither is there support in the record for the finding that there was a material sacrifice by the plaintiffs in moving to the Downer avenue property or any valuable consideration on their part performed or to be performed.

The promise to pay this $100 per month, therefore, was a

pure gratuity on the part of the defendant Roy; good, of course, so long as he elected to abide by it, but subject to his right to revoke it at any time as he did by failure to carry out the same.   As to the defendant *Emma E. Ludwig* the promise was still more in the nature of a gratuity, and, even were it to be considered as savoring of a contract, it was of such a nature that she, as a married woman, could not enter into so as to be legally bound thereby.

The agreement or understanding between the parties, if what took place amounts to an agreement, was not in writing and therefore void under sec. 2304, Stats.    There is no element of performance on the part of the plaintiffs in reliance upon such contract, or of fraud in the repudiating thereof, as brings it within the provisions of sec. 2305, Stats., or within any of the well established rules regulating the exercise of equitable powers of a court to enforce contracts.

Appellant also asserts that this real estate was considered and treated by the defendants as their homestead and that therefore there could be no incumbering of the same as against the defendant *Emma* without her assent thereto, evidenced by her signature, under the provisions of sec. 2203, Stats., defining a homestead, and under such decisions as *Rosenthal v. Pleck,* 166 Wis. 598, 166 N. W. 445.   During all this time, however, the defendants Roy and *Emma* were residents of Illinois and not of Wisconsin.   The benefits of the homestead exemption can, under the provisions of the section itself, be asserted only on behalf of those who are residents of this state.   The defendant *Emma* does not meet the call of the statute and cannot, therefore, rely upon the same.

There is sufficient support for so much of the judgment as impressed an equitable lien for the balance due upon the $4,000 loan made by the plaintiffs to defendant Roy in April, 1910.   As against him, he received the money upon

this assurance, relied upon by his mother, that a mortgage should be given on this land to secure such loan, and he ought not to be heard to the contrary, nor does he now contest such claim. The evidence is sufficient to warrant the finding of the trial court that the loan was made at the request of both *Emma* and Roy. Its proceeds went into property in which both defendants were conducting their separate lines of business and therefore sufficient to make such agreement binding upon *Emma* in spite of her coverture. So much of the judgment as makes the balance found due on this loan a prior lien upon the interests of either or both defendants *Emma* and Roy and prior and superior to any lien claimed by defendant *Emma* under her foreclosure proceedings against Roy, and all provisions for the enforcement by plaintiff of such lien by the usual proceedings in foreclosure for a personal judgment against the defendants *Emma* and Roy for any deficiency that might arise upon any such sale, will not be altered.

The judgment, however, must be set aside so far as it declares that the plaintiff is entitled to the use, possession, or occupancy of the premises during the balance of her life; that declares that plaintiff has any such right that she may enforce herein requiring defendants to pay the $100 per month; that interferes with the prior foreclosure in the action by defendant *Emma* on her trust deeds other than declares such judgment subordinate to the one to be entered herein.

*By the Court.*—Judgment reversed, and cause remanded with directions to enter judgment in accordance with this opinion.

KERWIN, J. (*concurring*). I concur in the opinion in this case only upon the ground that the material findings are not supported by the evidence. If I understand the opinion of the court correctly, it is based mainly upon that

proposition.   Individually I am of opinion that the findings are supported by sufficient evidence, but I am inclined to defer to the opinion of my brethren upon that point.   If the findings are supported by sufficient evidence, I am convinced that the judgment of the court below is right and should be affirmed on the authority of *Henrikson v. Henrikson,* 143 Wis. 314, 127 N. W. 962, and cases there cited.

A motion for a rehearing was denied, with $25 costs, on November 4, 1919.